**Donald SLAYTON, Appellant–
Petitioner,**

v.

**STATE of Indiana, Appellee–
Respondent.**

**No. 19A05–0104–CR–173.**

Court of Appeals of Indiana.

Sept. 17, 2001.

---

Donald Slayton, Pendleton, IN, Appellant Pro Se.

Steve Carter, Attorney General of Indiana, Grant H. Carlton, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

After being tried in absentia and unrepresented by counsel, Donald D. Slayton was convicted of intimidation, a Class D felony. In his hand-printed, pro se brief from the Pendleton Correctional Facility, Slayton raises three issues, which we restate as the following two:

I. Whether Slayton knowingly, intelligently, and voluntarily waived his right to counsel; and

II. Whether Slayton's conviction for intimidation is supported by sufficient evidence.

We reverse and remand for retrial.[1]

### Facts and Procedural History

Shortly after midnight on August 2, 2000, Slayton was arrested in Orange County on an open probation violation warrant from Dubois County. An Orange County deputy transported Slayton to the Dubois County line where he was met by Dubois County Deputy Tom Kleinhelter for transportation to the Dubois County Jail. According to Kleinhelter, Slayton "started to move away" from him as he was being handcuffed, so Slayton had to be "taken against [Kleinhelter's] car." R. at 57. According to Slayton, Kleinhelter then threw him into the back of his car, which "extremely pissed the Defendant off" and led him to kick the back door of the police car for the duration of the trip to the Dubois County Jail. Appellant's Br. at 8.

Upon his arrival at the jail, Slayton refused to cooperate during the booking process and struck Kleinhelter with his forearm when Kleinhelter attempted to remove items from his pockets. According to Kleinhelter, Slayton was "very aggressive" and "very verbal," so he "took

him to the floor to stop the aggression." R. at 65. Slayton repeatedly told Kleinhelter that he "was going to get" him and that he had "better watch [his] back." R. at 66. As a result, the State filed a two-count information against Slayton, charging him with intimidation, a Class D felony, and battery, a Class A misdemeanor.

When Slayton appeared in court several hours later for his initial hearing, he told the trial court that he had been "beaten up by an officer last night." R. at 4. The trial court informed Slayton of the charges and his rights, including the right to hire an attorney or the "possibility" of an attorney being appointed to represent him. R. at 6. Because Slayton mentioned that he had spoken to an attorney, the trial court "assume[d]" Slayton would hire one. R. at 6. A "preliminary hearing" was scheduled for September 27, 2000. R. at 9.

At the September 27 hearing, the trial court scheduled the case for a "final pretrial" for December 13, and a "first setting" jury trial on January 4, 2001. R. at 9, 20. The trial court inquired whether Slayton had "requested counsel," and Slayton replied that he "would request that the court appoint me standby counsel." R. at 12. The court briefly discussed Slayton's relationship with his court-appointed counsel in a prior case, but did not appoint counsel at the hearing. Bond was reduced, and Slayton was soon after released on bail.

At the December 13 pretrial, the trial court asked Slayton if anyone had been appointed to represent him. Slayton responded, "No," and the court then asked if Slayton had been represented by "advisory counsel" in another case. R. at 22. Slayton again responded, "No," and the trial court stated that the case would "go forward" on January 4. A colloquy then en-

1. Slayton's Motion to Reconsider filed July 11, 2001, is hereby denied.

sued about discovery materials that the State claimed to have sent and Slayton claimed not to have received. Later in the hearing, the trial court inquired whether Slayton wanted "legal counsel in [sic] advisory capacity," and Slayton responded that he had "spoken with a few attorneys" but his retention of one depended on the "financial part of it." R. at 25–26. The trial court confirmed the trial date and stated that it expected Slayton, "with an attorney or without an attorney ... to be present and prepared to go forward with the trial that date." R. at 25. Slayton once again stated that he had not received discovery from the State, and the trial court responded that, according to the court file, his discovery request had been answered and reiterated that it would not continue the trial date. The trial court asked if Slayton understood that it would appoint counsel "immediately" if Slayton lacked the financial means to hire counsel. Slayton responded that he did not "understand these court proceedings at this time, Your Honor. This is December 13th. You've got me set for January the 4th ...." R. at 26. When Slayton again reminded the trial court that he had not received discovery from the State, the trial court told Slayton that it would not argue with him and that the case "will be tried on that date regardless." R. at 26.[2]

On January 4, 2001, Slayton did not appear at his scheduled jury trial. The trial court told the jury that Slayton "had elected to represent himself. Mr. Slayton did not want to hire an attorney. He had an opportunity to have an attorney appointed to him, even, at no cost to himself, but he didn't want an attorney. He wanted to defend himself." R. at 32. Slayton was tried in absentia and convicted of intimidation but acquitted of battery. He

was sentenced to the maximum term of three years imprisonment. He appeals.

## I. Waiver of Counsel

 "Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other rights he may have." *United States v. Cronic*, 466 U.S. 648, 654, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). Because the "average defendant does not have the professional legal skills to protect himself" at trial, the Supreme Court has long held that a defendant's choice to appear without counsel must be made intelligently. *Johnson v. Zerbst*, 304 U.S. 458, 462–64, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). When a defendant asserts the right to self-representation, the trial court should advise the defendant of the "dangers and disadvantages of self-representation." *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The law "indulges every reasonable presumption against a waiver of this fundamental right [to counsel]," and thus before the right is found waived the trial court must "come to a considered determination that the defendant is making a voluntary, knowing, and intelligent waiver." *Poynter v. State*, 749 N.E.2d 1122, 1126 (Ind.2001).

Slayton contends that he never made a voluntary, knowing, and intelligent waiver of counsel, nor was he ever advised of the dangers of self-representation. The State responds that Slayton never requested that counsel be appointed and, by failing to appear at trial, "prevented the trial court from providing him with counsel or from even determining his intention to have counsel. Thus, because Slayton never clearly exercised his rights one way or another, he has waived this issue." Appel-

---

**2.** Later that day the State served Slayton with discovery, which it explained had been sent to the jail where Slayton had been incarcerated. R. at 27.

lee's Br. at 5. The State cites no authority in support of this proposition, because there is none.

■ As explained above, the trial court has a positive duty to advise the defendant of the dangers and disadvantages of self-representation. *Faretta*, 422 U.S. at 835, 95 S.Ct. 2525. After doing so, the court can find that the defendant, either verbally or by his conduct, has waived the right to counsel and elected to represent himself if that waiver is "knowing, voluntary, and intelligent." *Poynter*, 749 N.E.2d at 1126. However, "the law indulges every reasonable presumption against a waiver of this fundamental right." *Id.* The State's argument for "waiver" would turn this presumption on its head, requiring a defendant to clearly exercise rights that were never explained to him. Slayton's claim is not waived.

In *Poynter*, the defendant told the trial court at his initial hearing that he would be hiring counsel. However, the defendant appeared in court at two subsequent hearings without counsel. At the latter hearing the trial court set the case for trial two months later and told the defendant he needed to appear prepared for trial on that date. *Id.* at 1125. The defendant appeared without counsel and the trial proceeded. *Id.*

■ On appeal, the defendant asserted that he had not knowingly and intelligently waived his right to counsel. Our supreme court considered the following four factors: "(1) the extent of the court's inquiry into the defendant's decision, (2) other evidence in the record that establishes whether the defendant understood the dangers and disadvantages of self-representation, (3) the background and experience of the defendant, and (4) the context of the defendant's decision to proceed *pro se.*" *Id.* at 1127–28 (quoting *United States v. Hoskins*, 243 F.3d 407, 410 (7th Cir.2001)). Applying

these factors, our supreme court noted that, although Poynter had been advised of the procedural outcome of failing to secure counsel, he had never been told of the dangers and disadvantages of self-representation. "This lack of any advisement weighs heavily against finding a knowing and intelligent waiver." *Id.* at 1128. Although the defendant had prior misdemeanor convictions, the court could not determine whether these convictions were the result of trials or guilty pleas or whether Poynter independently understood the dangers and disadvantages of self-representation. Finally, the court noted that Poynter's conduct "did not result in gross delays or clearly appear to intend manipulation of the process." *Id.* Accordingly, our supreme court reversed, finding that the facts presented "do not warrant finding a knowing and intelligent waiver" of counsel. *Id.*

■ We reach the same conclusion here. Slayton, like Poynter, appeared in court three times before trial. Although the trial court made mention of counsel at each hearing, it never advised him of the dangers and disadvantages of self-representation. Indeed, it appears that Slayton wanted "standby" counsel, but the trial court inquired no further nor did it appoint counsel in any capacity. Although it is clear that Slayton had prior dealings with the criminal justice system, there is nothing in the record to suggest that he independently understood the dangers and disadvantages of self-representation. Finally, Slayton's conduct, although understandably frustrating to the trial court, did not result in "gross delays or clearly appear to intend manipulation of the process." *Id.* The time from initial hearing to trial was four months, and Slayton's reason for seeking delay at the final pretrial, three weeks before trial, was that he had not received discovery from the State.

For all of these reasons, we find that the facts and circumstances of this case do not warrant a finding of a knowing and intelligent waiver of counsel. Accordingly, the intimidation conviction is reversed and remanded for retrial.

## II. Sufficiency of the Evidence

Although we have remanded this case for retrial because the waiver of counsel was invalid, we must nevertheless address Slayton's sufficiency claim as it bears on the State's ability to retry him on that count. *See generally Wickizer v. State,* 626 N.E.2d 795, 801 (Ind.1993).

Slayton's conviction for intimidation as a Class D felony required that the State prove that he (1) communicated a threat, (2) to a law enforcement officer, (3) with the intent to place the law enforcement officer in fear of retaliation for a prior lawful act. Ind.Code § 35–45–2–1 (1998). Slayton contests only the third element.

 We review attacks on the sufficiency of the evidence under well-settled principles. We do not reweigh the evidence or judge the credibility of witnesses. *Anderson v. State,* 743 N.E.2d 1273, 1278 (Ind.Ct.App.2001). We consider only the evidence that supports the verdict and the reasonable inferences drawn therefrom. *Id.* We will uphold a conviction if there is substantial evidence of probative value from which a jury could have found the defendant guilty beyond a reasonable doubt. *Id.*

Dubois County Deputy Kleinhelter testified that he was dispatched to meet a deputy from Orange County at the county line to pick up Slayton and transport him to the Dubois County Jail. Kleinhelter further testified that Slayton became resistant and struck him while he was being processed at the jail. Slayton repeatedly told Kleinhelter he "was going to get" him and that he had "better watch [his] back."

R. at 65–66. Under our deferential standard of review, this is sufficient evidence that Slayton intended to place Kleinhelter in fear for his lawful acts of transporting him to the jail and processing him there. Accordingly, double jeopardy presents no bar to retrial of this count.

### Conclusion

The judgment of the trial court is reversed and remanded for retrial.

DARDEN, and VAIDIK, JJ., concur.