563 S.E.2d 346

**The STATE, Respondent,**

v.

**Brent C. McLAUREN, Appellant.**

**No. 3483.**

Court of Appeals of South Carolina.

Heard April 10, 2002.
Decided April 29, 2002.

490

Assistant Appellate Defender Robert M. Pachak, of the South Carolina Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson, and Assistant Attorney General Melody J. Brown, all of Columbia; and Solicitor Walter M. Bailey, of Summerville, for respondent.

ANDERSON, Judge:

Brent C. McLauren, a self described "jailhouse lawyer," was convicted of the practice of law without being admitted or sworn. He was sentenced to three years, consecutive to time already being served. McLauren appeals, arguing: (1) the trial judge erred in allowing him to represent himself; and (2)

S.C.Code Ann. § 40-5-310 should not be construed to prohibit "jailhouse lawyers" from helping, without compensation, inmates draft post-conviction relief ("PCR") applications. We affirm.

## FACTS/PROCEDURAL HISTORY

McLauren was an inmate at the Allendale Correctional Institution. McLauren filed a PCR application on behalf of Mark E. Rourk, also an inmate at the Allendale Correctional Institution. The PCR application stated that it had been completed by "Brent C. McLauren, Jr., Esq. ... Of Legal Counsel to Petitioner." The application included a cover letter that stated "Brent C. McLauren, Jr., Esq." The documents submitted included a PCR application, a memorandum of law, motions, an affidavit of service, and a statement of legal counsel. The documents were filed in Dorchester County. McLauren is not and never has been a licensed attorney in South Carolina.

McLauren was indicted for the violation of S.C.Code Ann. § 40-5-310. Section 40-5-310 states:

> No person may practice or solicit the cause of another person in a court of this State unless he has been admitted and sworn as an attorney. A person who violates this section is guilty of a felony and, upon conviction, must be fined not more than five thousand dollars or imprisoned not more than five years, or both.

At trial, McLauren represented himself. The judge appointed Marva Hardee-Thomas of the Dorchester County Public Defender's Office to assist McLauren and sit at the table with him during the trial. Following a jury trial, McLauren was found guilty. He was sentenced to three years, consecutive to the time he was already serving. McLauren appeals.

## ISSUES

I.   Did the trial court err in allowing McLauren to represent himself without determining if the waiver of counsel was valid?

II. Should § 40–5–310 be construed to prohibit "jailhouse lawyers" from helping, without compensation, inmates draft PCR applications?

III. Did the trial judge err by denying McLauren's motion for directed verdict?

### *LAW/ANALYSIS*

#### I. *Pro Se* Representation/Waiver of Right to Counsel

■ McLauren argues the trial court erred in allowing him to represent himself without determining if his waiver of counsel was valid. We disagree.

At McLauren's arraignment, the following colloquy occurred in connection with McLauren's representation:

The Court: Mr. McLauren, do you have an attorney?

McLauren: No, [Y]our Honor. I would, in fact, elect to represent myself in this matter.

The Court: All right. I'll be glad to let you represent yourself. We got some old sayings which I'm sure you're familiar with—

McLauren: Yes, Your Honor, I am.

The Court:—about representing yourself. But you're entitled to an attorney if you can't afford one. I'll be glad to give you one. I've got some good attorneys in the courtroom if you'd like, but if you would like to waive that
. . . .

McLauren: I would waive that, Your Honor.

The Court: All right, sir. Go ahead.

After McLauren pleaded not guilty, the trial judge offered to appoint an attorney to assist him. McLauren stated he did not think it would be necessary. The following exchange occurred:

The Court: All right, sir. Well, would you like me to—the site is here in this county, and I've got some good attorneys out there. And you don't have to use them, but would you like me to appoint one to assist you in any way they can?

McLauren: I don't think that would be necessary, Your Honor.

The Court: Let me tell you what I'm going to do.

McLauren: Okay.

The Court: Just to be on the safe side[,] I'm going to appoint a young lady who I watched from starting her practice when she finished law school, as a matter of fact. She tried many cases in here. Turn around and see her, that's Ms. Thomas right there. I'm going to appoint her to represent you. But she'll confer with you. And if you want to at the appropriate time defend yourself, I'll just have her there to give you any advice that you feel like you would like to have.

McLauren represented himself throughout the trial with Hardee–Thomas at the defense table. He was found guilty.

"It is well-established that an accused may waive the right to counsel and proceed *pro se.*" *State v. Brewer,* 328 S.C. 117, 119, 492 S.E.2d 97, 98 (1997) (citing, *inter alia, Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) and *State v. Dixon,* 269 S.C. 107, 236 S.E.2d 419 (1977)). "Although a defendant's decision to proceed *pro se* may be to the defendant's own detriment, it 'must be honored out of that respect for the individual which is the lifeblood of the law.' " *Id.* (quoting *Faretta,* 422 U.S. at 834, 95 S.Ct. at 2541).

■■■ "The trial judge has the responsibility to ensure that the accused is informed of the dangers and disadvantages of self-representation, and makes a knowing and intelligent waiver of the right to counsel." *Id.* (citing *Faretta* and *Dixon* ). "The ultimate test of whether a defendant has made a knowing and intelligent waiver of the right to counsel is not the trial judge's advice, but the defendant's understanding." *Id.* (citing *Graves v. State,* 309 S.C. 307, 422 S.E.2d 125 (1992)).

■■ "When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits." *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541 (citations omitted). To establish a valid waiver of counsel, *Faretta* requires the accused be: (1) advised of his right to counsel; and (2) adequately warned of the dangers of self-representation. *Bridwell v.*

*State,* 306 S.C. 518, 413 S.E.2d 30 (1992); *Prince v. State,* 301 S.C. 422, 392 S.E.2d 462 (1990); *see also Wroten v. State,* 301 S.C. 293, 294, 391 S.E.2d 575, 576 (1990) ("*Faretta* requires that a defendant 'be made aware of the dangers and disadvantages of self-representation so that the record will establish he knows what he is doing and his choice is made with eyes open.' ") (citation omitted). In the absence of a specific inquiry by the trial judge addressing the disadvantages of a *pro se* defense as required by the second *Faretta* prong, the appellate court will look to the record to determine whether petitioner had sufficient background or was apprised of his rights by some other source. *Bridwell,* 306 S.C. at 519, 413 S.E.2d at 31; *Prince v. State,* 301 S.C. at 424, 392 S.E.2d at 463.

Factors the courts have considered in determining if an accused had sufficient background to understand the disadvantages of self-representation include:

(1) the accused's age, educational background, and physical and mental health;

(2) whether the accused was previously involved in criminal trials;

(3) whether he knew of the nature of the charge and of the possible penalties;

(4) whether he was represented by counsel before trial or whether an attorney indicated to him the difficulty of self-representation in his particular case;

(5) whether he was attempting to delay or manipulate the proceedings;

(6) whether the court appointed stand-by counsel;

(7) whether the accused knew he would be required to comply with the rules of procedure at trial;

(8) whether he knew of legal challenges he could raise in defense to the charges against him;

(9) whether the exchange between the accused and the court consisted merely of *pro forma* answers to *pro forma* questions; and

(10) whether the accused's waiver resulted from either coercion or mistreatment.

*State v. Cash,* 309 S.C. 40, 43, 419 S.E.2d 811, 813 (Ct.App. 1992) (citing *Fitzpatrick v. Wainwright,* 800 F.2d 1057 (11th Cir.1986) and *Strozier v. Newsome,* 926 F.2d 1100 (11th Cir. 1991)).

Given McLauren's background and understanding of the legal system and legal rights, in addition to the nature of the charge and the language that he used at trial, we find McLauren made a valid waiver. We consider the *Cash* factors as follows:

First, McLauren was a mature man with both formal and informal education. There was no evidence in the record of any physical or mental impairment.

Second, McLauren had previously been involved in criminal proceedings. The record indicates he had a criminal record dating back to 1965. At the time of trial, he was serving time in jail for unrelated charges.

In addition to his involvement in criminal proceedings as a defendant, the evidence indicated McLauren was involved in the criminal proceedings of other individuals at Allendale Correctional Institution. Out of the presence of the jury, McLauren told the judge, "And I have no problem with admitting that I'm a jailhouse lawyer ...." Kenneth Long, inmate grievance coordinator at Allendale Correctional Institution, testified that he was aware McLauren assisted other prisoners with legal work. Lieutenant Louis Farris, also an employee of Allendale Correctional Institution, stated he had heard that McLauren often gave and rendered assistance to other prisoners. Five prisoners each testified about McLauren's assistance to themselves or others in the jail.

Third, McLauren knew of the nature of the charge. At trial, McLauren addressed questions by the court and made motions. He understood he was charged with practicing law without a license and attempted to distinguish jailhouse lawyers as an exception to the statute he was charged with violating.

Fourth, although McLauren was not represented by an attorney before trial and appeared *pro se* at his arraignment, the court assigned an attorney from the public defender's office to assist him during the trial if he needed any legal

advice. This attorney was available to him throughout the trial and sat at the defense table with him.

Fifth, there is no indication that McLauren was attempting to delay or manipulate the proceedings. On the contrary, he made a motion for a speedy trial. The trial began on January 13, 2000, only a few months after his arraignment on September 20, 1999.

Sixth, the trial judge appointed stand-by counsel for McLauren. An attorney from the public defender's office sat at the table with him and at times answered questions from the court.

Seventh, the record indicates that McLauren knew to comply with procedural rules and had at least some familiarity with the rules. He made motions, called several witnesses, and objected at times to the prosecutor's questions.

Eighth, the record indicates McLauren knew of legal challenges he could raise in defense to the charges against him. He argued a novel theory of law that there was an exception to the statute that allowed prisoners to represent other prisoners without compensation.

Ninth, the exchange between McLauren and the court did not consist merely of *pro forma* answers to *pro forma* questions. McLauren's language and actions at trial indicated he had an understanding of the legal system.

Tenth, there was no evidence that McLauren's waiver resulted from coercion or mistreatment. McLauren expressly stated that he wanted to represent himself and that he would waive his right to an attorney. There is no indication he wanted to do this because he had been coerced or mistreated.

We find McLauren's waiver was knowing and voluntary. He was advised of his right to counsel, and even though the trial judge did not make a specific inquiry addressing the disadvantages of self-representation, McLauren had a sufficient background to make a valid waiver under the *Cash* factors.

## II.  Section 40–5–310

McLauren argues § 40–5–310 should not be construed to prohibit jailhouse lawyers from helping, without compensa-

tion, inmates draft PCR applications. He contends that many such inmates are indigent, uneducated, and otherwise without any other available means to adequately pursue post-conviction relief. We disagree.

Section 40–5–310 provides the following:

No person may practice or solicit the cause of another person in a court of this State unless he has been admitted and sworn as an attorney. A person who violates this section is guilty of a felony and, upon conviction, must be fined not more than five thousand dollars or imprisoned not more than five years, or both.

There is no dispute McLauren was not admitted to the Bar at the time he prepared and filed the documents for Rourk. He admitted several times he practiced law, stating at one point, "[I]f I was in society practicing law in the same capacity that I practice law while incarcerated . . . ." In a cross examination question, he stated, "You should be aware that I've been practicing law, if that's what you want to call it . . . ." He later stated, "I have no problem with admitting that I'm a jailhouse lawyer . . . ."

McLauren argues in his brief that he did not "practice or solicit the cause of another person *in a* court of this State." (emphasis added). This argument is without merit.

"The generally understood definition of the practice of law 'embraces the preparation of pleadings, and other papers incident to actions and special proceedings, and the management of such actions and proceedings on behalf of clients before judges and courts.'" *State v. Despain,* 319 S.C. 317, 319, 460 S.E.2d 576, 577 (1995) (quoting *In re Duncan,* 83 S.C. 186, 189, 65 S.E. 210, 211 (1909)). Our Supreme Court has defined the practice of law to include the preparation and filing of legal documents involving the giving of advice, consultation, explanation, or recommendations on matters of law. *State v. Robinson,* 321 S.C. 286, 468 S.E.2d 290 (1996). The reason preparing documents for others must be held to constitute the practice of law is not for the economic protection of the legal profession. *Despain,* 319 S.C. at 320, 460 S.E.2d at 578. Rather, it is for the protection of the public from the potentially severe economic and emotional consequences that may flow from the erroneous preparation of legal documents

or the inaccurate legal advice given by persons untrained in the law. *Id.* (citing *State v. Buyers Serv. Co.,* 292 S.C. 426, 357 S.E.2d 15 (1987)). Just because McLauren was not *in court* for Rourk does not mean that he was not practicing law, as he was preparing and submitting documents on Rourk's behalf, which in itself constitutes the practice of law.

### III. Section 40–5–80

McLauren argues § 40–5–80, when read in connection with § 40–5–310, should be construed to allow him to help other inmates in preparation of their PCR applications as long as he does not take fees or gratuities.

Section 40–5–80 provides the following:

This chapter shall not be construed so as to prevent a citizen from prosecuting or defending his own cause, if he so desires, *or the cause of another, with leave of the court first had and obtained; provided,* that he declare on oath, if required, that he neither has accepted nor will accept or take any fee, gratuity or reward on account of such prosecution or defense or for any other matter relating to the cause.

(emphasis added, italics in original).

McLauren stated he did not receive compensation for his services. We agree that § 40–5–80 does not prevent representation of another without compensation. However, the express language of § 40–5–80 requires that leave be obtained *first. Robinson,* 321 S.C. at 290, 468 S.E.2d at 292 (analyzing S.C.Code Ann. § 40–5–80). Further, it is within the trial judge's sound discretion whether to allow such representation. *Id.* There is no evidence that McLauren obtained leave from the court before giving advice and preparing the PCR application. Since he did not obtain leave, his argument is without merit.

### IV. McLauren's Directed Verdict Motion

McLauren avers the trial judge erred by denying his motion for directed verdict, which he made at the conclusion of the State's case. We disagree.

When ruling on a motion for a directed verdict, the trial court is concerned with the existence or non-existence of evidence, not its weight. *State v. Williams,* 303 S.C. 274, 400

S.E.2d 131 (1991); *State v. Green*, 327 S.C. 581, 491 S.E.2d 263 (Ct.App.1997). On appeal from the denial of a directed verdict, an appellate court must view the evidence in the light most favorable to the State. *State v. Rowell*, 326 S.C. 313, 487 S.E.2d 185 (1997); *State v. Schrock*, 283 S.C. 129, 322 S.E.2d 450 (1984). If there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, this Court must find the case was properly submitted to the jury. *State v. Kelsey*, 331 S.C. 50, 502 S.E.2d 63 (1998); *State v. Huggins*, 325 S.C. 103, 481 S.E.2d 114 (1997).

The evidence is overwhelming that the defendant violated § 40–5–310. Numerous acts are revealed in the evidentiary record in regard to McLauren's conduct as reviewed under the aegis and ambit of § 40–5–310.

## CONCLUSION

We rule that South Carolina does **not** allow "jailhouse lawyers" to practice law under the guise of an inmate giving advice or preparing legal documents for another inmate. The evidence is overwhelming in this case that the defendant practiced law in violation of § 40–5–310.

We conclude that the express language of § 40–5–80 requires that leave of court be obtained before representation of another by a person not licensed to practice law is allowed without compensation. The court must exercise **sound discretion** whether to allow such representation. An open-ended, unfettered application of § 40–5–80 by courts would essentially emasculate § 40–5–310.

The defendant freely and voluntarily waived his right to counsel. A *"Cash* factors" review convinces this Court that the defendant possessed a sufficient background to waive his right to counsel.

Accordingly, based on the foregoing reasons, McLauren's conviction for the practice of law without being admitted or sworn is

**AFFIRMED.**

CURETON, J., and THOMAS, Acting Judge, concur.