584 S.E.2d 131

**The STATE, Respondent,**

v.

**Paul THOMPSON, Appellant.**

**No. 3659.**

Court of Appeals of South Carolina.

Submitted April 18, 2003.

Decided July 7, 2003.

256

Senior Assistant Appellate Defender Wanda H. Haile, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh and Assistant Deputy Attorney General Charles H. Richardson, all of Columbia; and Solicitor Jay E. Hodge, Jr., of Darlington, for Respondent.

ANDERSON, J.:

Paul Thompson was tried *in absentia* and without counsel. He was convicted of discharging a firearm into a dwelling and malicious injury to personal property over $1000 but less than

$5000. The trial judge sentenced him to five years on each count to run concurrently. We reverse and remand.[1]

## FACTS/PROCEDURAL BACKGROUND

Vanessa Pearson was at home with her adult daughter, Najwa, on October 30, 1999 when a man named Derrick came to her door and asked for "Junior." Pearson told him that no one by the name of "Junior" lived there. Thirty minutes later he came to her door again and asked for "Junior." She reiterated to him that no one by the name of "Junior" lived there. Pearson testified that Derrick, Paul Thompson, and Michael Graham then started shooting at her car and into her house. The damage to her car was about $4000. Pearson identified Peggy Wright as sitting in the backseat of the vehicle that the men drove during the occurrence.

Graham, Wright, and Thompson were tried together for discharging a firearm into a dwelling and malicious injury to personal property over $1000 but less than $5000. The same counsel represented Graham and Wright. Thompson was not present nor did he have counsel present. The judge told the bailiff to call Thompson's name three times at the courthouse door before the jury selection began. After Thompson did not respond, he was tried in his absence. Graham and Wright presented alibi evidence, which resulted in their acquittals. Thompson was found guilty as charged.

A sealed sentence was given as required by law. The sealed sentence is *NOT* opened until the defendant is arrested and before the court. After his arrest, Thompson was brought before the court for the opening of the sealed sentences. Pursuant to *State v. Smith*, 276 S.C. 494, 280 S.E.2d 200 (1981), the circuit judge opening the sealed sentence is under the law the sentencing judge. Exercising his discretion, the judge sentenced Thompson to five years on each count, concurrently.

At sentencing, Thompson's attorney professed that Thompson appeared at four or five roll calls after his arrest on November 15, 1999. During that time, Thompson requested

---

1. This case was decided without oral argument pursuant to Rule 215, SCACR.

through the Clerk of Court representation from the Public Defender's Office. Thompson contends he was told he did not meet the cut-off amount of money to qualify for a public defender. He explained to them that he had child support arrearage payments that virtually consumed his salary and offered to produce documentation. According to Thompson's attorney, no one would listen to him regarding his child support payments. The court refuted Thompson's assertion, explicating that if Thompson had said he did not have an attorney, one would have been appointed for him.

A Bench Warrant was issued for Thompson on September 11, 2000 and another was issued on May 17, 2001. During September 2001, Thompson went to a rehabilitation facility in Maryland for cocaine and alcohol addiction. He left the facility on November 19, 2001. He went to High Point, North Carolina and then to his uncle's house in Bennettsville. Thompson was tried on November 28, 2001. Thompson's brother testified that the family was only given fourteen hours notice of trial.

The judge determined that a lawyer would have been appointed for him if he had presented himself at trial:

THE COURT: Well, I can say here for the record if he would have been here like the other two defendants were, didn't have a lawyer, we would have appointed one for him.

[THOMPSON'S COUNSEL]: Yes, sir, Your Honor.

THE COURT: But you can't appoint one for him if he runs and doesn't even come to court.

## *LAW/ANALYSIS*

Thompson argues the judge erred in denying his motion for a new trial because he was denied the right to counsel at trial.

## I. RIGHT TO COUNSEL

It is well established that a defendant may be tried in his absence. Rule 16, SCRCrimP ("Except in cases wherein capital punishment is a permissible sentence, a person indicted for misdemeanors and/or felonies may voluntarily waive his right to be present and may be tried in his absence upon a finding by the court that such person has received notice of his

right to be present and that a warning was given that the trial would proceed in his absence upon a failure to attend the court.").[2] However, to try a defendant without counsel is a completely different matter. *Pennsylvania v. Ford,* 715 A.2d 1141, 1143 (1998) (citing *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)).

■ "The Sixth and Fourteenth Amendments of our Constitution guarantee that a person brought to trial in any state or federal court must be afforded the right to the assistance of counsel before he can be validly convicted and punished by imprisonment." *Faretta v. California,* 422 U.S. 806, 807, 95 S.Ct. 2525, 2527, 45 L.Ed.2d 562, 566 (1975); *accord Gideon v. Wainwright,* 372 U.S. 335, 339–40, 83 S.Ct. 792, 794, 9 L.Ed.2d 799, 802–03 (1963). Moreover, an indigent criminal defendant may request the court to appoint an attorney to represent him. *Gideon,* 372 U.S. at 344, 83 S.Ct. at 796–97, 9 L.Ed.2d at 802; *see Scott v. Illinois,* 440 U.S. 367, 367, 99 S.Ct. 1158, 1159, 59 L.Ed.2d 383, 389 (1979) ("The Sixth and Fourteenth Amendments require that no indigent criminal defendant be sentenced to a term of imprisonment unless the State has afforded him the right to assistance of appointed counsel in his defense . . .").

"Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other rights he may have." *United States v. Cronic,* 466 U.S. 648, 654, 104 S.Ct. 2039, 2044, 80 L.Ed.2d 657, 664 (1984). The erroneous deprivation of a defendant's fundamental right to the assistance of counsel is *per se* reversible error. *State v. Boykin,* 324 S.C. 552, 555, 478 S.E.2d 689, 690 (Ct.App.1996) (citing *Chapman v. California,* 386 U.S. 18, 23 n. 8, 87 S.Ct. 824, 828 n. 8, 17 L.Ed.2d 705 (1967)). "Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice." *McKnight v. State,* 320 S.C. 356, 358, 465 S.E.2d 352, 353 (1995) (quoting *Strickland v. Washington,* 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674, 696 (1984)).

---

2. Thompson's waiver of his right to be present at trial is not at issue on appeal.

## II.  RELINQUISHMENT OF RIGHT TO COUNSEL

█ A defendant may surrender his right to counsel through (1) waiver by affirmative, verbal request; (2) waiver by conduct; and (3) forfeiture. *State v. Boykin,* 324 S.C. 552, 556, 478 S.E.2d 689, 690 (Ct.App.1996).

### A.  Waiver

█ A defendant may waive his Sixth Amendment right to counsel.  A waiver is an intentional and voluntary relinquishment of a known right. *United States v. Goldberg,* 67 F.3d 1092, 1099 (3d Cir.1995); *Maxwell v. Genez,* 350 S.C. 563, 571, 567 S.E.2d 496, 500 (Ct.App.2002).  The courts indulge every reasonable presumption against waiver of fundamental constitutional rights, and do not presume acquiescence in the loss of fundamental rights. *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938); *Pitts v. North Carolina,* 395 F.2d 182, 188 (4th Cir.1968).

### 1.  Waiver by Affirmative, Verbal Request

█ Waiver is most commonly understood as an affirmative, verbal request. *United States v. Goldberg,* 67 F.3d 1092, 1099 (3d Cir.1995); *State v. Boykin,* 324 S.C. 552, 556, 478 S.E.2d 689, 690 (Ct.App.1996).  To effectuate a valid waiver of the right to counsel, the two-pronged *Faretta* test must be met in which the accused is (1) advised of his right to counsel and (2) adequately warned of the dangers of self-representation. *Prince v. State,* 301 S.C. 422, 423–24, 392 S.E.2d 462, 463 (1990) (citing *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)).  The trial judge must determine whether there is a knowing and intelligent waiver by the defendant. *State v. Dixon,* 269 S.C. 107, 236 S.E.2d 419 (1977) (citing *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)).  If the trial judge fails to address the disadvantages of appearing *pro se,* as required by the second prong of *Faretta,* "this Court will look to the record to determine whether petitioner had sufficient background or was apprised of his rights by some other source." *Prince,* 301 S.C. at 424, 392 S.E.2d at 463; *accord Wroten v. State,* 301 S.C. 293, 294, 391 S.E.2d 575, 576 (1990).  While a specific inquiry by the trial judge expressly addressing the

disadvantages of a *pro se* defense is preferred, the ultimate test is not the trial judge's advice but rather the defendant's understanding. *Gardner v. State*, 351 S.C. 407, 411–12, 570 S.E.2d 184, 186 (2002); *Wroten*, 301 S.C. at 294, 391 S.E.2d at 576. If the record demonstrates the defendant's decision to represent himself was made with an understanding of the risks of self-representation, the requirements of a voluntary waiver will be satisfied. *Id.*

Pellucidly by his absence, Thompson did not make an affirmative, verbal request to waive counsel.

## 2. Waiver by Conduct

A defendant may waive his right to counsel through his conduct. *United States v. Goldberg*, 67 F.3d 1092, 1100 (3d Cir.1995); *State v. Jacobs*, 271 S.C. 126, 128, 245 S.E.2d 606, 608 (1978); *State v. Boykin*, 324 S.C. 552, 556, 478 S.E.2d 689, 690 (Ct.App.1996). Most courts have held that the defendant must first be warned that his misconduct will thereafter be treated as a waiver. *Boykin*, 324 S.C. at 556, 478 S.E.2d at 691. "[T]o the extent that the defendant's actions are examined under the doctrine of 'waiver,' there can be no valid waiver of the Sixth Amendment right to counsel unless the defendant also receives *Faretta* warnings." *Goldberg*, 67 F.3d at 1100. Any subsequent misconduct will be treated as a "waiver by conduct." *Boykin*, 324 S.C. at 556, 478 S.E.2d at 690.

In *State v. Cain*, 277 S.C. 210, 284 S.E.2d 779 (1981), the appellant was tried *in absentia* and without counsel. Cain was represented by counsel at a preliminary hearing and both he and his attorney were aware the case was coming up for trial. *Id.* at 210, 284 S.E.2d 779, 284 S.E.2d at 779. The court found Cain was cognizant of his duty to keep in contact with his attorney and the court. *Id.* The court held a waiver of the right to counsel was inferable from his omissions. *Id.* at 211, 284 S.E.2d at 779.

Although in the present case Thompson was tried *in absentia* and without counsel, the facts in *Cain* are quite different. Unlike Thompson, Cain was represented by counsel at a preliminary hearing. *Cain* edifies:

The appellant was released on a general appearance bond and was represented by counsel at a preliminary hearing. Both the appellant and his attorney knew° the case was coming up for trial. The appellant knew he had a duty to stay in touch with his attorney and with the court.

We held in *State v. Jacobs*, 271 S.C. 126, 245 S.E.2d 606 (1978) that a waiver of the right to counsel can be inferred from a defendant's actions. In this case, the appellant failed to fulfill the conditions of his appearance bond and neglected to keep contact with his attorney, although he knew his trial was imminent. We think a waiver of the right to counsel is inferrable [sic] from these omissions.

*Id.* at 210–11, 284 S.E.2d at 779 (footnote omitted).

The case of *State v. Jacobs*, 271 S.C. 126, 245 S.E.2d 606 (1978), analyzes a trial scenario where the appellant participated at trial, but did not have counsel. The appellant was not indigent. The trial judge urged him on several occasions to retain a lawyer. The case was continued at least once to enable the appellant to hire an attorney. *Id.* at 127, 245 S.E.2d at 607. The judge asked an attorney with the Public Defender's Office to sit with him at trial to offer him advice and assistance. *Id.* Although the appellant never expressly waived his right to counsel, the court held the appellant waived his right to counsel by his conduct because he was given reasonable time to secure counsel, he was financially capable of retaining counsel, and the court had done all it could to advise him to seek counsel. *Id.*

The facts in *Jacobs* are dissimilar to the case *sub judice.* Jacobs was present in the courtroom, he was financially capable of retaining counsel, the judge had repeatedly encouraged him to get an attorney, the judge continued the case at least on one occasion for him to retain an attorney, and he had the assistance of a public defender at trial. *Jacobs* is enlightening:

Appellant never expressly waived his right to counsel but the trial judge found that he was very capable of retaining counsel, that the court had done all it could do to urge him to do so, and that he had still not employed a lawyer. The trial judge asked an attorney from the Public Defender's Office to sit with him during his trial to give him advice and

assistance. The attorney advised the court that he was totally unprepared for trial but the trial judge said that appellant's inaction had caused the situation. Appellant agreed to allow the attorney to sit with him but indicated that he wanted him to do nothing further in the case. The trial then proceeded.

. . . .

On the facts of this case, we feel that the trial judge allowed appellant, a non-indigent, a reasonable time in which to retain counsel and that appellant did not make a sufficient showing of reasons for his failure to have counsel present. He was on several occasions urged to retain counsel and a phone was made available to him and additional time was given him in order for him to make arrangements. When, on the day of trial, counsel was not present, appellant did not name his attorney, if one had been retained, nor did he indicate when counsel would be available. He gave no reasons for the absence of counsel other than that he had been expecting his brother to bring a lawyer.

We conclude that, by his conduct, appellant waived his right to counsel.

*Id.* at 127–28, 245 S.E.2d at 607–08.

An excellent academic explication of an appellant tried *in absentia* and without representation is *Pennsylvania v. Ford,* 715 A.2d 1141 (Pa.Super.Ct.1998). The appellant was originally appointed counsel. *Id.* at 1143. He requested a continuance in order to find private counsel. *Id.* The court then approved the withdrawal of the court-appointed counsel. *Id.* Two weeks before jury selection was initiated, the appellant fled the jurisdiction after violating his probation in a prior unrelated case. *Id.* When the appellant did not appear for jury selection, his private counsel filed a motion to withdraw, arguing that the appellant had not paid a large portion of his fee and his absence impeded trial preparation. *Id.* The court granted the motion and proceeded to try the appellant *in absentia* and without counsel. *Id.* The court found the appellant did not validly waive his right to counsel because there was no inquiry on the record as to whether the appellant was aware of his rights or whether he knowingly waived them. *Id.* at 1144. The court observed that this type of inquiry is "quite

obviously impossible" when a defendant fails to appear in court. *Id.* However, the court ruled that "[f]ailure to appear . . . is not tantamount to a knowing waiver." *Id.* The appellant's fugitive status was not a *per se* waiver nor could it be punished by the "negation of constitutional rights." *Id.* His fugitive status was a separate wrong with its own consequences. *Id.*

While Thompson did not have counsel withdraw at the brink of trial, he similarly was not queried on the record as to whether he was aware of his rights or whether he knowingly waived them. The *Ford* court acknowledged the impracticability of asking the defendant on the record when he does not appear in court, but still found that a failure to appear does not equate a knowing waiver. Likewise, Thompson's failure to appear does *NOT* rise to the level of waiver.

The Indiana Court of Appeals thoroughly analyzed a trial *in absentia* involving a defendant unrepresented by counsel. *Slayton v. Indiana,* 755 N.E.2d 232 (Ind.Ct.App.2001). Slayton appeared in court three times before trial in which the court mentioned counsel but never advised him of the dangers and disadvantages of self-representation. *Id.* at 234. The State argued that Slayton never requested the court to appoint counsel and that his failing to appear at trial "prevented the trial court from providing him with counsel or from even determining his intention to have counsel." *Id.* at 235. Hence, the State maintained Slayton waived his right because he never clearly exercised it one way or another. *Id.* The court found the State's argument was flawed. First, the court determined that Slayton wanted "standby" counsel. *Id.* at 236. Next, the court acknowledged the failure to advise Slayton of the dangers and disadvantages of self-representation relating to the *Faretta* two-prong test. *Id.* Finally, the court recognized the presumption against a waiver of the right to counsel. *Id.* The court ruled "[t]he State's argument for 'waiver' would turn this presumption on its head, requiring a defendant to clearly exercise rights that were never explained to him." *Id.* Based upon the record being void of any implication that Slayton understood the dangers and disadvantages of self-representation, the court held the facts and circumstances of the case did not warrant a finding of a knowing and intelligent waiver of counsel. *Id.*

The case at bar is most similar to the facts in *Slayton.* Both defendants were tried *in absentia,* unrepresented by counsel, and had appeared in court several times before trial. Neither of the defendants was advised of the dangers and disadvantages of self-representation under *Faretta.* Furthermore, the record in the instant case does not reveal any inference that Thompson understood the dangers and .disadvantages of self-representation. Thompson did not have a prior record which would have familiarized him with the criminal court system. Abiding by the presumption against a waiver of the right to counsel, we conclude Thompson did not waive his right to counsel through his conduct when he never was apprised of his right nor the dangers and disadvantages of self-representation.

## B.  Forfeiture

Some courts recognize forfeiture as a means to waive the Sixth Amendment right to counsel. A defendant can forfeit his right to counsel irrespective of his knowledge of either the consequences of his actions or the dangers of self-representation. *United States v. Goldberg,* 67 F.3d 1092, 1100 (3d. Cir.1995). "[B]ecause of the drastic nature of the sanction, forfeiture would appear to require extremely dilatory conduct. On the other hand, a 'waiver by conduct' could be based on conduct less severe than that sufficient to warrant a forfeiture." *Id.* at 1101. Situations where a defendant's own conduct forfeits his right to counsel are unusual, typically involving a manipulative or disruptive defendant. *State v. Coleman,* 253 Wis.2d 693, 644 N.W.2d 283, 288 (Ct.App.2002).

The Eleventh Circuit Court of Appeals in *United States v. McLeod* identified methods in which a defendant could forfeit counsel:

> The Sixth Amendment right to counsel, for example, may be forfeited by a defendant's failure to retain counsel within a reasonable time, even if this forfeiture causes the defendant to proceed *pro se. See Fowler,* 605 F.2d at 183. Additionally, a defendant who misbehaves in the courtroom may forfeit his constitutional right to be present at trial. *See e.g., Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970); *Foster v. Wainwright,* 686 F.2d 1382, 1388–89 (11th Cir.1982), *cert. denied* 459 U.S. 1213, 103

S.Ct. 1209, 75 L.Ed.2d 449 (1983). A defendant who causes a witness to be unavailable for trial forfeits his right to confrontation. *See United States v. Thevis,* 665 F.2d 616, 630 (5th Cir. Unit B 1982), *cert. denied,* 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982). A defendant who escapes from custody during his trial waives his Sixth Amendment rights to be present and to confront witnesses during the trial. *See Golden v. Newsome,* 755 F.2d 1478, 1481 (11th Cir.1985).

By analogy, we conclude that under certain circumstances, a defendant who is abusive toward his attorney may forfeit his right to counsel.

53 F.3d 322, 325 (11th Cir.1995) (footnotes omitted). McLeod had verbally abused and threatened to harm counsel in a telephone conversation, at least four times had threatened to sue him, and had attempted to persuade counsel to engage in unethical conduct. *Id.* at 325. His behavior was "repeatedly abusive, threatening, and coercive." *Id.* at 326. Consequently, McLeod forfeited his right to counsel.

Misconduct by a defendant directed toward counsel is the quiddity of *State v. Boykin,* 324 S.C. 552, 478 S.E.2d 689 (Ct.App.1996). Boykin verbally abused and physically threatened defense counsel. The judge granted the request of counsel to be relieved. *Id.* at 554–55, 478 S.E.2d at 689–90. *Boykin* elucidates:

Although we do not condone Boykin's actions, we do not believe they were so severe as to permanently deprive him of appointed counsel. Both cases which have held a defendant forfeited his right to counsel involved a course of conduct more egregious than the single incident alleged here. Accordingly, we need not decide whether South Carolina should embrace the doctrine of forfeiture because we find that Boykin's conduct in the one event related by Padgett was not sufficient to constitute forfeiture. While the trial judge was certainly justified in granting Padgett's motion to be relieved as counsel, substitute counsel should have been appointed for Boykin. Therefore, the decision of the trial court is reversed and the case remanded for a new trial.

We decline to place our imprimatur upon Thompson's conduct or absence. Our declination of approval of Thompson's activities does *NOT* mandate forfeiture of counsel.

## *CONCLUSION*

Forfeiture of counsel is a drastic consequence, requiring more than absence from trial. We rule Thompson did *NOT* relinquish his right to counsel through forfeiture.

Based on the record in its entirety, we hold Thompson did *NOT* waive his right to counsel.

He was erroneously deprived of his fundamental right to assistance of counsel. This denial is *per se* reversible error. Therefore, the decision of the circuit court is

**REVERSED AND REMANDED.**

GOOLSBY and HUFF, JJ., concur.