672 S.E.2d 585

**Ex parte Mamie L. JACKSON, Appellant,**

**In re City of Columbia, Respondent,**

v.

**Mamie L. Jackson, Defendant.**

**No. 4477.**

Court of Appeals of South Carolina.

Submitted Nov. 1, 2008.

Decided Jan. 8, 2009.

Appellate Defender Elizabeth A. Franklin, South Carolina Commission on Indigent Defense, of Columbia, for Appellant.

Peter M. Balthazor, Office of the City Attorney, of Columbia, for Respondent.

WILLIAMS, J.:

Mamie Jackson (Jackson) appeals the trial court's decision to hold her in contempt and her imprisonment sentence of ninety days. We reverse.

## FACTS

The City of Columbia (the City) commenced an action against Jackson seeking injunctive relief. Among the grounds for relief, the City sought to enjoin Jackson from accumulating rubbish and debris on her property as prohibited by the City's Code. The trial court granted the City's request and enjoined Jackson from accumulating junk, clutter, and debris on her property. Additionally, the trial court granted the City's request to abate the conditions that constituted a violation of the City's Property Maintenance Code. Subsequently, the City removed and disposed of the junk, clutter, and debris on Jackson's property.

Approximately two months after this hearing, the City brought a petition for rule to show cause as to why Jackson should not be held in contempt for violating the trial court's order prohibiting her from accumulating junk, clutter, and

debris on her property. The City argued that less than a week after it removed the items on Jackson's property, Jackson brought additional clutter, debris, and junk back onto her property.

The trial court held a hearing to determine if Jackson was in contempt. Jackson appeared pro se and argued she did not violate the trial court's order because she did not bring additional items onto the property but rather moved the items from inside the house to outside the house for storage purposes. The trial court rejected this argument and found Jackson in contempt and sentenced her to ninety days imprisonment. This appeal follows.[1]

## LAW/ANALYSIS

Courts have inherent power to punish for contemptuous conduct. *Miller v. Miller*, 375 S.C. 443, 453–54, 652 S.E.2d 754, 759–60 (Ct.App.2007) (internal citations omitted). Courts are vested by their very creation with the power to preserve order in judicial proceedings and to enforce judgments and orders. *Id.* Contempt results from the willful disobedience of a court's order. *Id.* A willful act is defined as one which is done voluntarily and intentionally with the specific intent to do something the law forbids, or with specific intent to fail to do something the law requires to be done. *Id.*

Initially, we must determine whether the contempt involved in this case was civil or criminal. The determination of whether contempt is civil or criminal hinges on the underlying purpose of the contempt ruling. *Id.* at 456–57, 652 S.E.2d at 761. If the primary purpose of contempt is to coerce a party to do the thing required by the court for the benefit of the complainant, then the contempt is considered civil. *Id.* However, if the principal function of the contempt is to preserve the court's authority and to punish a party for disobedience of the court's order, then it is criminal. *Id.* Punishment for civil contempt is remedial in that sanctions are conditioned on compliance with the court's order, whereas an

---

1. Jackson was released from custody pending the appeal and appointed counsel.

unconditional penalty is considered criminal contempt because it is solely and exclusively punitive in nature. *Id.*

In the present case, the contempt imposed was criminal because the function of the sanctions imposed was to punish Jackson for disobedience of the trial court's order. Namely, the trial court sought to punish Jackson because she violated the order prohibiting her from accumulating junk, clutter, and debris on her property. Furthermore, the punishment imposed, the ninety days imprisonment, was unconditional in that Jackson did not have an opportunity to purge herself of the sanctions if she complied with the court order. Thus, the trial court viewed the sanctions as criminal rather than civil. *See id.* (holding a sentence of imprisonment is considered punitive, and therefore criminal contempt, if it is limited to a definite period).

The distinction between civil and criminal contempt is crucial because criminal contempt triggers additional constitutional safeguards. *Id.* The Sixth and Fourteenth Amendments to the United States Constitution ensure that an individual be afforded the right to assistance of counsel before he or she can be validly convicted and punished by imprisonment. *State v. Thompson,* 355 S.C. 255, 261–62, 584 S.E.2d 131, 134–35 (Ct.App.2003). The right to counsel is by far the most pervasive, for it affects a person's ability to assert any other rights he or she may have. *Id.* The erroneous deprivation of this right constitutes per se reversible error. *Id.*

It is, however, possible to waive the Sixth Amendment right to counsel. *Id.* To effectuate a valid waiver of the right to counsel, the accused must (1) be advised of the right to counsel and (2) be adequately warned of the dangers of self-representation. *State v. McLauren,* 349 S.C. 488, 493–94, 563 S.E.2d 346, 348–49 (Ct.App.2002) (*"Faretta*[2] requires that a defendant be made aware of the dangers and disadvantages of self-representation so that the record will establish he knows what he is doing and his choice is made with eyes open.") (internal citations and quotations omitted). It is the trial court's responsibility to determine whether there was a know-

---

**2.** *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

ing and intelligent wavier by the accused. *Thompson,* 355 S.C. at 261–62, 584 S.E.2d at 134–35. A specific inquiry by the trial court expressly addressing the disadvantages of appearing pro se is preferred. *Id.* at 262–63, 584 S.E.2d at 134–35.

If the trial court fails to address the disadvantages of appearing pro se, this Court will examine the record to determine whether the accused had sufficient background or was apprised of his rights by some other source. *McLauren,* 349 S.C. at 494, 563 S.E.2d at 349. Consequently, when determining whether the accused knowingly and voluntarily waived his or her right to counsel the "ultimate test is not the trial judge's advice but rather the defendant's understanding." *Thompson,* 355 S.C. at 262–63, 584 S.E.2d at 135.

The following factors are to be considered in determining if the accused had a sufficient background to understand the disadvantages of self-representation:

(1) the accused's age, educational background, and physical and mental health;

(2) whether the accused was previously involved in criminal trials;

(3) whether he knew of the nature of the charge and of the possible penalties;

(4) whether he was represented by counsel before trial or whether an attorney indicated to him the difficulty of self-representation in his particular case;

(5) whether he was attempting to delay or manipulate the proceedings;

(6) whether the court appointed stand-by counsel;

(7) whether the accused knew he would be required to comply with the rules of procedure at trial;

(8) whether he knew of legal challenges he could raise in defense to the charges against him;

(9) whether the exchange between the accused and the court consisted merely of *pro forma* answers to *pro forma* questions; and

(10) whether the accused's waiver resulted from either coercion or mistreatment.

*McLauren,* 349 S.C. at 494, 563 S.E.2d at 349.

In the present case, the trial court conducted a hearing to determine if Jackson was in contempt. Jackson appeared pro se at this hearing. At the conclusion of the hearing, the trial court sentenced Jackson to ninety days imprisonment. The record is completely devoid of any statements by the trial court informing Jackson of her right to counsel. Additionally, the record does not reveal the trial court warned Jackson in any way as to the dangers of self-representation. Moreover, the trial court did not determine, as required, that Jackson knowingly and intelligently waived the right to counsel.

Our examination of the record does not reveal Jackson had a sufficient background or was apprised of her constitutional right to counsel by another source. Consequently, the trial court's decision to sentence Jackson to ninety days imprisonment was reversible error. *Thompson,* 355 S.C. at 262–63, 584 S.E.2d at 134–35. (holding the erroneous deprivation of the right to counsel constitutes per se reversible error).[3]

We note that this opinion is limited to the issue of constructive contempt. Constructive contempt is contemptuous conduct occurring outside the presence of the court, whereas direct contempt is defined as contemptuous conduct that occurs in the presence of the court. *Miller,* 375 S.C. at 455, 652 S.E.2d at 760. In the present case, the contemptuous conduct was Jackson's failure to comply with the court order prohibiting her from accumulating junk, clutter, and debris on

---

3. The City argues the issue of whether Jackson was entitled to counsel is not preserved for review because the trial court did not address it. We disagree. "A notable exception to this general rule requiring a contemporaneous objection is found when the record does not reveal a knowing and intelligent waiver of the right to counsel. The pro se defendant cannot be expected to raise this issue without the aid of counsel." *State v. Rocheville,* 310 S.C. 20, 25, 425 S.E.2d 32, 35 (1993). Thus, Jackson was not required to preserve this issue for our review.

her property.  This conduct occurred outside the presence of the court and is therefore constructive contempt.[4]

## CONCLUSION

Accordingly, the trial court's decision is

**REVERSED.**[5]

PIEPER and GEATHERS, JJ., concur.

---

4.  Jackson raises other issues on appeal.  Due to the disposition of the right to counsel issue, we need not address these issues. *Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) ("An appellate court need not address remaining issues when disposition of prior issue is dispositive.").

5.  We decide this case without oral arguments pursuant to Rule 215, SCACR.