**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

South Carolina Department of Social Services,
Respondent,

v.

Victoria Lemay, James Wesley Lemay, Andrew
Coonrad, Erlene Nolley and James L. Nolley,
Defendants,

Of Whom James Wesley Lemay is the Appellant.

In the interest of a minor under the age of eighteen.

Appellate Case No. 2014-002720

———————————

Appeal From Greenville County
Jerry D. Vinson, Jr., Family Court Judge

———————————

Unpublished Opinion No. 2016-UP-017
Heard November 3, 2015 – Filed January 11, 2016

———————————

**AFFIRMED IN PART AND VACATED IN PART**

———————————

James H. Price, III, of James H. Price, III, PA, and J.
Falkner Wilkes, both of Greenville, for Appellant.

Deborah Murdock Gentry, of Murdock Law Firm, LLC,
of Mauldin, for Respondent.

Don J. Stevenson, of Greenville, for the Guardian ad Litem.

_____

**PER CURIAM:** James Wesley Lemay (Father) appeals the family court's order removing his minor child (Child) and requiring him to complete a placement plan. On appeal, Father argues the family court erred in requiring him to make an incriminating statement, in violation of his Fifth Amendment right, as a specific condition for successful completion of his placement plan and a necessary requirement for him to have any future contact with Child. We affirm in part and vacate in part.

In August 2014, the family court held a consolidated termination of parental rights (TPR) hearing and a merits hearing. After the family court denied TPR, Father moved to withdraw from the hearing, and the family court engaged in a colloquy with Father. During the colloquy, Father confirmed he had reviewed the placement plan the Department of Social Services (DSS) had proposed and agreed with its terms. Father also acknowledged he was freely and voluntarily withdrawing and knew he was giving up his right to present any evidence. The family court subsequently allowed Father to withdraw from the hearing.

At the conclusion of the hearing, the family court adopted the placement plan proposed by DSS. However, the family court added a provision that prohibited Father from having any contact with Child until Father recognized Child's injuries "were the result of physical abuse _for which [he was] responsible_[1] and not the result of some underlying medical condition." It also required Father to "recognize and accept [his] culpability for the abuse of [Child] through a therapeutic counseling process in order to remedy the conditions [that] led to removal of [Child]." Father filed a motion for reconsideration, arguing these provisions violated his constitutional privilege against self-incrimination by forcing him to, in effect, admit to a criminal act to regain custody of Child. The family court denied the motion, and this appeal followed.

Initially, we find Father did not knowingly and voluntarily waive his constitutional privilege under the Fifth Amendment when he withdrew from the hearing because, at that time, he was unaware he was waiving his Fifth Amendment privilege against self-incrimination. _See Strickland v. Strickland_, 375 S.C. 76, 85, 650

---

[1] The family court handwrote the italicized portion on the order.

S.E.2d 465, 470-71 (2007) (stating waiver requires a party to know of a right and know he was abandoning that right); *Parker v. Parker*, 313 S.C. 482, 487, 443 S.E.2d 388, 391 (1994) ("Waiver is a voluntary and intentional abandonment or relinquishment of a known right.").  Because Father did not know the family court would later modify DSS's proposed placement plan to include a term that required Father to admit he was culpable for Child's injuries, Father did not waive his constitutional privilege under the Fifth Amendment when he withdrew from the hearing.  *See Janasik v. Fairway Oaks Villas Horizontal Prop. Regime*, 307 S.C. 339, 344, 415 S.E.2d 384, 387-88 (1992) ("Generally, the party claiming waiver must show that the party against whom waiver is asserted possessed, at the time, actual or constructive knowledge of his rights or of all the material facts upon which they depended."); *State v. Thompson*, 355 S.C. 255, 262, 584 S.E.2d 131, 134 (Ct. App. 2003) ("The courts indulge every reasonable presumption against waiver of fundamental constitutional rights . . . .").

Additionally, we find the provisions the family court included in the placement plan could be construed as requiring Father to make an admission of abuse to the family court.  Requiring that, however, would violate Father's Fifth Amendment privilege against self-incrimination because that admission could be used against Father during the prosecution of Father's currently pending criminal charge.  *See* U.S. Const. amend. V ("No person . . . shall be compelled in any criminal case to be a witness against himself . . . ."); S.C. Const. art. I, § 12 ("No person shall be . . . compelled in any criminal case to be a witness against himself."); *see also* *Chavez v. Martinez*, 538 U.S. 760, 770-71 (2003) (stating in the Fifth Amendment context, there are "prophylactic rules designed to safeguard the core constitutional right protected by the Self-Incrimination Clause," including "an evidentiary privilege that protects witnesses from being forced to give incriminating testimony, even in noncriminal cases, unless that testimony has been immunized from use and derivative use in a future criminal proceeding before it is compelled"); *Kastigar v. United States*, 406 U.S. 441, 444-45 (1972) (stating the Fifth Amendment privilege against compulsory self-incrimination "can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory[,] and it protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used" (footnote omitted)).  Accordingly, we vacate the portions of the placement plan that require Father to "recognize and accept [his] culpability for the abuse of [Child]" and to "recognize [Child's] injuries were the result of physical abuse for which [he was] responsible."  The remainder of the order, including the portion of

the placement plan that requires Father to attend and successfully complete therapeutic counseling, is affirmed.[2]

**AFFIRMED IN PART AND VACATED IN PART.**

**HUFF, WILLIAMS, and THOMAS, JJ., concur.**

---

[2] We note this opinion is in no way intended to foreclose the family court's power to require parents to undergo therapy to remedy the conditions that led to removal.