478 S.E.2d 689

**The STATE, Respondent,**

v.

**Otis Lee BOYKIN, Appellant.**

**No. 2585.**

Court of Appeals of South Carolina.

Heard Sept. 11, 1996.
Decided Nov. 4, 1996.

---

Senior Assistant Appellate Defender Wanda H. Haile, SC Office of Appellate Defense, Columbia, for appellant.

Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Caroline Callison Tiffin, Columbia, Solicitor C. Gordon McBride, Hartsville, for respondent.

HEARN, Judge:

Otis Lee Boykin appeals his conviction for two counts of armed robbery. Boykin was sentenced to twenty-five years imprisonment on each count, with the sentences to run concurrently. We reverse and remand for a new trial.

*Facts*

Boykin and five co-defendants were indicted for two counts of armed robbery. Four of the co-defendants ultimately pled guilty to the charges, but Boykin chose to stand trial. In a pre-trial motion, Boykin's appointed counsel, Mahlon Padgett, requested to be relieved as counsel. Padgett alleged Boykin had verbally abused him and physically threatened him at the detention center. Padgett described the incident as follows:

Judge, it was Thursday a week ago. I went out to talk about his case with him because he had told me it was coming up this week. We went in the back room and we talked about who he wanted to call as witnesses, and I took down a list of their names, and he kept wanting to know what I was going to tell the jury, what his defense was going to be. And I informed him that his defense was going to be whatever his witnesses had to say and whatever he had to say if he chose to testify, and that was going to be the defense.

And he became more and more hostile, and at that time, I told him I'd come back in another couple of days, and if he thought up any more that he wanted to use as [a] defense, to get that ready. And then as I was walking down the hallway to go back up to the front of the jail, he got more and more hostile. He came after me, starting cussing me real bad. And then we got in the waiting room out there where the other two guards were, he started coming after me, and I was sidestepping around this way (indicating). I had my folders in my hand. And as I was sidestepping, one of the guards out there finally had to come over and bump him with one shoulder. I guess he didn't think he was really serious. And Mr. Boykin came around the guard, and the guard had to come around and grab him and get in front of him, and the other guard told me to go back down the hallway until they could get him back in his cell. And that took about two or three minutes. They finally got him back in his cell and they let me leave.

Earl Hood, the warden of the Marlboro County Detention Center, also testified that the security guards' report confirmed Padgett's testimony. Boykin testified he was unhappy with Padgett, but denied hitting or touching him. The judge

granted Padgett's motion to be relieved as counsel and refused to appoint another in his place. The trial judge stated, "I'm not going to appoint an attorney and have him abused by either one of you two people. I'm not going to do that. I may or may not, and I'll decide later, ask someone to sit at the table and advise you procedurally."

The next day, the judge announced attorney Craig Ohanesian would sit with Boykin at trial and advise him on procedural questions. The judge made it clear Ohanesian's role was only to answer Boykin's procedural questions and not to act as Boykin's attorney. The judge stated, "Under those circumstances, I conclude that you have waived your right to a trial—to an attorney. I will not appoint an attorney and permit any defendant to abuse that attorney."

The jury found Boykin guilty of two counts of armed robbery. The judge sentenced Boykin to twenty-five years imprisonment for each count, ordering the sentences to run concurrently.

### Discussion

Boykin argues the trial judge erred in dismissing his court-appointed attorney without appointing substitute counsel. Boykin contends he did not waive his right to counsel and was not informed of the dangers inherent in self-representation. We agree.

The Sixth Amendment mandates that in all criminal proceedings, the accused shall have the right to the assistance of counsel for his defense. U.S. Const. amend. VI. Furthermore, an indigent criminal defendant is entitled to have an attorney appointed by the court to represent him. *Gideon v. Wainwright*, 372 U.S. 335, 344, 83 S.Ct. 792, 796–97, 9 L.Ed.2d 799 (1963). The erroneous deprivation of a defendant's fundamental right to the assistance of counsel is *per se* reversible error. *Chapman v. California*, 386 U.S. 18, 23 n. 8, 87 S.Ct. 824, 828 n. 8, 17 L.Ed.2d 705 (1967). The right of an accused to effective assistance of counsel, however, does not extend to the appointment of counsel of choice, or to special rapport or even a meaningful relationship with appointed counsel. *Morris v. Slappy*, 461 U.S. 1, 13–14, 103 S.Ct. 1610, 1617–18, 75 L.Ed.2d 610 (1983).

Courts have recognized three ways in which a defendant may relinquish his right to counsel. First, a defendant may waive his Sixth Amendment right to counsel. A waiver is an intentional and voluntary relinquishment of a known right. *United States v. Goldberg*, 67 F.3d 1092, 1099 (3d Cir.1995). The most common method of waiving a right is by an affirmative, verbal request. *Id.* The Supreme Court has held that a waiver of the right to counsel must be knowing, voluntary, and intelligent. *Johnson v. Zerbst*, 304 U.S. 458, 465, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). The defendant must be informed on the record of the dangers and disadvantages of self-representation, or the record must indicate the defendant had sufficient background to understand the disadvantages of self-representation before he waives his right to counsel. *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975); *Bridwell v. State*, 306 S.C. 518, 519, 413 S.E.2d 30, 31 (1992); *State v. Cash*, 309 S.C. 40, 42, 419 S.E.2d 811, 813 (Ct.App.1992).

A defendant may also waive his right to counsel through his conduct. *Goldberg*, 67 F.3d at 1100. Once a defendant has been warned that his misconduct will thereafter be treated as a waiver of his right to counsel, any subsequent misconduct is treated as a "waiver by conduct." *Id.* Most courts have held there can be no "waiver by conduct" unless the defendant is first warned of the consequences of his actions. *Id.; see also United States v. Meeks*, 987 F.2d 575 (9th Cir.), *cert. denied*, 510 U.S. 919, 114 S.Ct. 314, 126 L.Ed.2d 261 (1993) (defendant's continuing attempts to substitute counsel did not constitute waiver by conduct where the court did not warn the defendant of the dangers of proceeding *pro se* ); *United States v. Bauer*, 956 F.2d 693 (7th Cir.), *cert. denied*, 506 U.S. 882, 113 S.Ct. 234, 121 L.Ed.2d 169 (1992) (finding waiver by conduct where defendant was warned of the dangers of self-representation, could afford to hire an attorney, but refused to do so); *United States v. Allen*, 895 F.2d 1577 (10th Cir.1990) (defendant's refusal to accept appointed counsel and failure to hire his own did not constitute waiver of right to counsel where the trial judge made no inquiry to determine whether the waiver was knowing and intelligent); *United States v. Fazzini*, 871 F.2d 635 (7th Cir.), *cert. denied*, 493 U.S. 982, 110 S.Ct. 517, 107 L.Ed.2d 518 (1989) (defen-

dant's failure to cooperate with his fourth appointed attorney acted as a waiver of his right to counsel where the trial judge had warned him his conduct would result in his proceeding *pro se* ).

Finally, some courts have held a defendant may forfeit his Sixth Amendment right to counsel. Forfeiture results in the loss of the right regardless of the defendant's knowledge of either the consequences of his actions or the dangers of self-representation. *United States v. Goldberg,* 67 F.3d 1092, 1100 (3d Cir.1995).[1] "[B]ecause of the drastic nature of the sanction, forfeiture would appear to require extremely dilatory conduct. On the other hand, a 'waiver by conduct' could be based on conduct less severe than that sufficient to warrant a forfeiture." *Id.* at 1101.[2] While a number of courts have recognized the existence of forfeiture of right to counsel, only two courts have held a defendant's conduct serious enough to warrant a forfeiture, particularly in the absence of any prior warning by the court.

In *United States v. McLeod,* 53 F.3d 322 (11th Cir.1995), the defendant dismissed his first attorney and was verbally abusive and threatening to his second attorney. *Id.* at 323. The second attorney testified McLeod had threatened to sue him on at least four occasions and had attempted to persuade him to engage in unethical conduct in connection with the case. *Id.* at 325. The Eleventh Circuit Court of Appeals found that McLeod's behavior was repeatedly abusive, threatening and

---

1. In *Goldberg,* the defendant threatened his attorney's life when the attorney refused to file a motion to withdraw as counsel. The trial court found the defendant's actions in threatening his attorney with physical violence constituted a waiver of his right to counsel. *Id.* at 1097. The Third Circuit Court of Appeals disagreed, finding the defendant could not have waived his right to counsel since he was never warned of the consequences of his actions. *Id.* at 1102. Rather, the court held the issue was whether the defendant *forfeited* his right to counsel. *Id.* at 1101. The court declined to find a forfeiture because the trial court made its factual findings with regard to the death threat at a hearing to which Goldberg was not a party. *Id.* at 1102.

2. We recognize that some courts have even held that a forfeiture can occur only in instances of knowing and intelligent conduct by the defendant, but this is the minority view. *Morgano v. Florida,* 439 So.2d 924 (Fla.Dist.Ct.App.1983); *Wisconsin v. Cummings,* 199 Wis.2d 721, 546 N.W.2d 406 (1996).

coercive. *Id.* at 326. Although the court was "troubled by the fact that McLeod was not warned that his misbehavior might lead to *pro se* representation," the court stated, "we cannot say that the district judge erred by concluding that McLeod had forfeited this right to counsel." *Id.* at 326.

In *United States v. Jennings*, 855 F.Supp. 1427 (M.D.Pa. 1994), *aff'd* 61 F.3d 897 (3d Cir.1995), the defendant was charged with assaulting a corrections officer with a deadly weapon while imprisoned in Lewisburg, Pennsylvania. *Id.* at 1430. After the judge denied his motion for appointment of new counsel, Jennings punched his attorney, who fell to the floor of the courtroom. *Id.* at 1432–33. Six marshalls were required to restrain him. *Id.* at 1433. Thereafter, Jennings threatened the life of the Assistant United States Attorney, corrections officers and his former counsel. *Id.* While the court found Jennings "waived" his right to counsel by his actions, the court actually employed a forfeiture analysis, since Jennings was not warned of the consequences of his actions. The court stated, "We are aware that deeming the right to counsel as waived by the conduct of a defendant is an extreme sanction. However, the conduct of Jennings in this instance was extreme and outrageous." *Id.* at 1444.

In the present case, the record shows Boykin was not warned of the consequences of his actions, nor of the dangers inherent in self-representation. Because waiver implies the intentional relinquishment of a known right, Boykin could not have waived his right to counsel, either expressly or by his conduct. The issue, then, is whether this state will recognize forfeiture of the right to counsel and whether Boykin's actions were so severe as to constitute a forfeiture.

■ Although we do not condone Boykin's actions, we do not believe they were so severe as to permanently deprive him of appointed counsel. Both cases which have held a defendant forfeited his right to counsel involved a course of conduct more egregious than the single incident alleged here. Accordingly, we need not decide whether South Carolina should embrace the doctrine of forfeiture because we find that Boykin's conduct in the one event related by Padgett was not sufficient to constitute forfeiture.

While the trial judge was certainly justified in granting Padgett's motion to be relieved as counsel, substitute counsel should have been appointed for Boykin. Therefore, the decision of the trial court is reversed and the case remanded for a new trial.

Boykin also argues the trial judge erred in failing to hold a hearing pursuant to *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), when it appeared the state used four peremptory challenges in a racially discriminatory manner. Because we reverse on other grounds we need not reach Boykin's remaining argument.

Accordingly, the decision of the trial judge is

**REVERSED AND REMANDED.**

HOWELL, C.J., and STILWELL, JJ., concur.