570 S.E.2d 184

**Charles GARDNER, Petitioner,**

**v.**

**STATE of South Carolina, Respondent.**

**No. 25528.**

Supreme Court of South Carolina.

Submitted Feb. 21, 2002.

Decided Sept. 9, 2002.

408

Deputy Chief Attorney Joseph L. Savitz, III, of South Carolina Office of Appellate Defense, of Columbia, for petitioner.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General B. Allen Bullard, Jr., and Assistant Attorney General Elizabeth R. McMahon, all of Columbia, for respondent.

CHIEF JUSTICE TOAL:

This Court granted Charles Gardner's ("Petitioner") petition for a writ of certiorari to review the denial, after a hearing, of his application for Post–Conviction Relief ("PCR"). Petitioner argues the PCR court erred in finding he knowingly and intelligently waived his right to counsel. We agree.

### FACTUAL/PROCEDURAL BACKGROUND

In February 1995, Petitioner was indicted on two counts: (1) for trafficking over 400 grams of cocaine; and (2) for trafficking over eighty grams of crack cocaine. Pursuant to a plea agreement, Petitioner plead guilty to trafficking twenty-eight grams or more, but less than 100 grams, of cocaine and to trafficking ten grams or more, but less than twenty-eight grams, of crack cocaine. Petitioner was not represented by counsel at the plea hearing. Pursuant to the State's recommendation, Petitioner received concurrent 10 year sentences.

In September 1995, Petitioner filed an application for PCR. After a hearing, the PCR judge denied Petitioner relief. Petitioner then petitioned this Court for a writ of certiorari. This Court granted certiorari, and the sole issue before this Court is:

Did the PCR Court err in holding Petitioner knowingly and intelligently waived his right to counsel?

### LAW/ANALYSIS

Petitioner argues the record does not support the PCR court's finding that he understood the dangers of self-representation and knowingly and intelligently waived his right to counsel. We agree.

At the PCR hearing, Petitioner testified he retained an attorney after he was arrested. However, because he was unable to afford the legal fees, the private attorney stopped representing Petitioner.[1] A public defender was never appointed.

Petitioner testified he spoke with Assistant Solicitor Jon Ozmint ("Ozmint") about his plea.[2] Petitioner stated Ozmint informed him that his bond would be revoked if he refused to plead guilty. According to Petitioner, Ozmint told him he would recommend a seven year sentence, of which he would only have to serve three years, if Petitioner would plead guilty and turn in three other drug dealers. Ozmint admits he discussed a plea with Petitioner, but denied he ever told Petitioner that his bond would be revoked or that he would only have to serve three years.

Petitioner's brother, Rick Gardner, also testified at the PCR hearing. He stated Ozmint offered Petitioner a seven year deal and promised him he would only have to spend four years in prison. He later testified Ozmint offered Petitioner a ten year deal and promised he would only spend three years in prison.

On cross-examination, Petitioner admitted Magistrate David Crenshaw[3] informed him at his arraignment that he had a

---

1. The record is not clear at what point Petitioner's private attorney stopped his representation.

2. Following the initial dismissal of Petitioner's PCR application, he filed a petition for a writ of certiorari. This Court issued an order remanding the case back to the PCR judge for a reconstruction of the record from the PCR hearing. The PCR judge then issued a second order finding an additional hearing to reconstruct was unnecessary because the first order was so detailed. Petitioner has not voiced an objection to this order. Accordingly, the testimony discussed comes from the Order of Dismissal.

3. Judge Crenshaw also testified at the PCR hearing. He stated it was his usual practice to explain to those who appear before him that they

right to a public defender. Furthermore, he stated he was aware public defenders were available to represent people who could not afford to hire private counsel. In fact, Petitioner testified he had been represented by a public defender in 1993 on a charge of possession of cocaine.

The PCR court found Petitioner failed to prove that he did not knowingly and voluntarily waive his right to counsel. In its order, the PCR court stated Petitioner was of above average intelligence.[4] The court further stated the record indicated Petitioner was advised at his arraignment that he had a right to a public defender. In addition, the court found Petitioner was completely familiar with the court system.

According to the United States Supreme Court, in order to waive the right to counsel, the accused must be (1) advised of his right to counsel *and* (2) adequately warned of the dangers of self-representation. *Prince v. State*, 301 S.C. 422, 392 S.E.2d 462 (1990) (citing *Faretta v.California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)) (emphasis added). The trial judge must determine whether there is a knowing and intelligent waiver by the defendant. *State v. Dixon*, 269 S.C. 107, 236 S.E.2d 419 (1977) (citing *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). If the trial judge fails to address the disadvantages of appearing *pro se*, as required by the second prong of *Faretta*, "this Court will look to the record to determine whether petitioner had sufficient background or was apprised of his rights by some other source." *Prince*, 301 S.C. at 424, 392 S.E.2d at 463 (citing *Wroten v. State*, 301 S.C. 293, 391 S.E.2d 575 (1990)).

> While a specific inquiry by the trial judge expressly addressing the disadvantages of a *pro se* defense is preferred, the ultimate test is not the trial judge's advice but rather the defendant's understanding. If the *record demonstrates*

---

have a right to a public defender. He further testified that he makes sure the accused understands his right to an attorney before he allows him to sign a "statement of rights" form. However, Judge Crenshaw did not testify that he explained to Petitioner the dangers of self-representation.

4. The record is unclear whether Petitioner actually graduated from high school. In his application for PCR, he stated he did not have a high school diploma. At his guilty plea hearing, when asked how far he went in school, Petitioner responded, "12th Grade."

412

the defendant's decision to represent himself was made with an understanding of the *risks of self-representation,* the requirements of a voluntary waiver will be satisfied.

*Wroten,* 301 S.C. at 294, 391 S.E.2d at 576 (citing *Fitzpatrick v. Wainwright,* 800 F.2d 1057, 1065 (11th Cir.1986)) (emphasis added).

In a PCR action, if the record fails to demonstrate the petitioner made an informed choice to proceed *pro se,* with "eyes open," then the petitioner did not make a knowing and voluntary waiver of counsel, and the case should be remanded for a new trial. *See Watts v. State,* 347 S.C. 399, 556 S.E.2d 368 (2001); *Wroten; Prince; Bridwell v. State,* 306 S.C. 518, 413 S.E.2d 30 (1992). We find Petitioner was not adequately apprised of the dangers of self-representation. The plea judge never even acknowledged that Petitioner did not have counsel with him at the plea hearing. The judge did not inquire about why Petitioner had relieved his counsel, or if he wished to have counsel present. There is absolutely no mention by the judge of anything relating to the right to an attorney, the dangers of self-representation, or the like in the guilty plea transcript. Furthermore, Petitioner did not say anything about counsel. He never stated that he did not want an attorney, that he wished to waive this right, or that he wanted to represent himself.

Because of the absolute failure of the plea judge to ask Petitioner for a waiver and to apprise him of the dangers of appearing *pro se,* as is required by *Faretta,* this Court must look into the record to determine if Petitioner had sufficient background or was apprised of his rights by some other source. *Prince; Wroten* (absent a specific inquiry by the trial court into the hazards of proceeding *pro se,* this Court will examine the record to determine whether the accused was advised of his rights from some other source or had sufficient background to intelligently waive his right to counsel). When determining if an accused has a sufficient background to understand the dangers of self-representation, the courts consider many factors including: (1) the accused's age, educational background, and physical and mental health; (2) whether the accused was previously involved in criminal trials; (3) whether the accused knew the nature of the charge(s) and of

the possible penalties; (4) whether the accused was represented by counsel before trial and whether that attorney explained to him the dangers of self-representation; (5) whether the accused was attempting to delay or manipulate the proceedings; (6) whether the court appointed stand-by counsel; (7) whether the accused knew he would be required to comply with the rules of procedure at trial; (8) whether the accused knew of legal challenges he could raise in defense to the charge(s) against him; (9) whether the exchange between the accused and the court consisted merely of *pro forma* answers to *pro forma* questions; and (10) whether the accused's waiver resulted from either coercion or mistreatment. *State v. Cash,* 309 S.C. 40, 43, 419 S.E.2d 811, 813 (Ct.App.1992) (citations omitted).

While there is evidence in the record to indicate Petitioner was aware of his right to counsel, there is insufficient evidence to indicate he was aware of the dangers of self-representation. After weighing the factors above, we find the PCR court erred in finding Petitioner knowingly and intelligently waived his right to counsel.

First, the plea judge did not give Petitioner any warning about the dangers of proceeding *pro se.* He did not inform him of the nature of the charges or of the possible penalties. Petitioner did have a 12th grade education, and he had been represented by counsel on a previous charge to which he pled guilty. He also had a private attorney when he was first charged. However, the record gives no indication this attorney explained to him the dangers of self-representation. *See Wroten* (fact that petitioner had spoken with an attorney and fact that he had plead guilty to another charge in 1979 did not sufficiently demonstrate that he was aware of the dangers of self-representation).

Second, although the guilty plea proceeding did not consist merely of *pro forma* questions and answers, the transcript on its face poses several other problems which would indicate the plea itself was not knowing and voluntary. This Court and the United States Supreme Court have held that before a court can accept a guilty plea, a defendant must be advised of the federal and state constitutional rights he or she is waiving. *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d

274 (1969); *Pittman v. State,* 337 S.C. 597, 524 S.E.2d 623 (1999). Specifically, a defendant must be aware of the privilege against self incrimination, the right to a jury trial, the right to confront one's accusers, the nature and crucial elements of the offense, the maximum and any mandatory minimum penalty, and the nature of the constitutional rights being waived. *Id.*

In this case, the plea judge did not even ask Petitioner for an admission of guilt. The transcript also indicates the trial judge did not advise Petitioner of the crucial elements of the charged offenses, or of the possible penalties if the recommended sentence was not accepted by the plea judge. In addition, the trial judge did not ask questions to ensure Petitioner's understanding of the consequences of his plea. Furthermore, any defect in the court's questioning was not cured by the accused conversation with another source, since Petitioner had no attorney. *See State v. Ray,* 310 S.C. 431, 437, 427 S.E.2d 171, 174 (1993) (a knowing and voluntary waiver of the constitutional rights which accompany a guilty plea "may be accomplished by colloquy between the Court and the defendant, between the Court and defendant's counsel, or both.")

CONCLUSION

Based on the foregoing, we **REVERSE** the PCR court's order of dismissal and **REMAND** for a new trial.

MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.