596 S.E.2d 500

**In the interest of CHRISTOPHER H., a minor under the age of seventeen, Appellant.**

**No. 3725.**

Court of Appeals of South Carolina.

Heard Dec. 10, 2003.

Decided Jan. 20, 2004.

Withdrawn, Substituted and Refiled March 22, 2004.

Assistant Appellate Defender Tara S. Taggart, of Columbia, for Appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson, Assistant Attorney General W. Rutledge Martin, all of Columbia; and Solicitor Jay E. Hodge, Jr., of Darlington, for Respondent.

HEARN, C.J.:

Christopher H. pled guilty to grand larceny and second-degree burglary and was committed to the Department of Juvenile Justice for an indeterminate period not to exceed his twenty-first birthday. He was not represented by counsel at any of his juvenile hearings. Christopher argues on appeal that: (1) he did not validly waive his right to counsel pursuant to *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); and, (2) his guilty plea was not knowingly, voluntarily, and intelligently entered. We reverse and remand for a new trial.

## FACTS

Christopher H. was charged in Darlington County with the following five offenses that occurred between March and September of 2001:(1) grand larceny of a Yamaha four-wheeler, (2) assault and battery, (3) first-degree burglary, (4) grand larceny of a Honda four-wheeler, and (5) second-degree burglary. At his 48–hour detention hearing, the assistant solicitor told the judge that the clerk's office had screened Christopher and his legal guardian and determined they did not qualify for a public defender. Although Christopher did not have counsel, the public defender sat in on the detention hearing. The judge ordered detention until a hearing the following Tuesday. At the conclusion of the detention hearing, the solicitor noted that he had advised Christopher's legal guardian that she needed to retain counsel for him. The judge responded: "Yes. You would need—If you don't qualify for the Public Defender, you do need to go ahead and retain private counsel. These offenses are of a very serious nature, so, you know, he needs some representation in this case."

Christopher's ten-day detention hearing was held at the same time as five other juveniles' detention hearings. Several of the juveniles were represented by the public defender. When Christopher's turn came, the public defender stated: "Your Honor, on the [Christopher H.] child, I remember that I stood with him last week but he did not qualify. His parents made too much money. That's why we're not representing him." The judge responded "Okay," and asked if Christopher had anything to tell him. Christopher stated in response, "I

don't have nothing really to say. I did all the crimes and I committed them and I did them and that's my fault." When the judge asked what he was charged with, the solicitor initially listed all five charges. Later, however, the solicitor stated that Christopher was charged with only two offenses, second-degree burglary and grand larceny of a Yamaha four-wheeler. The solicitor further noted:

He is not represented. The parents do not qualify for the Public Defender. I told them, approached them and talked with them and told them that if he was guilty, it would be in his interest to go ahead and plead today and the recommendation would be that he'd be committed to Midlands for an evaluation. . . .

The judge questioned Christopher directly:

THE COURT: Now you've heard the Solicitor and you heard what he said. Do you feel like you're threatened or coerced in any way by anyone?

CHRISTOPHER: No, sir.

THE COURT: Did you do the things you're accused of?

CHRISTOPHER: Yes, sir.

THE COURT: Do you understand that we'd give you a trial if you'd like it and put up witnesses and that kind of thing?

CHRISTOPHER: Yes, sir.

THE COURT: Understanding that, do you still wish to plead delinquent?

CHRISTOPHER: Yes, sir.

THE COURT: Are you delinquent?

CHRISTOPHER: Yes, sir.

THE COURT: Did you break in the church?

CHRISTOPHER: Yes, sir.

THE COURT: Did you steal the four-wheeler?

CHRISTOPHER: Yes, sir.

THE COURT: And no one has forced you to plead this way? You understand that we can send you away for a while?

CHRISTOPHER: Yes, sir.

THE COURT: Understanding that, do you still wish to plead delinquent?

CHRISTOPHER: Yes, sir.

Thereafter, the family court judge ordered that Christopher be committed to the Department of Juvenile Justice for evaluation for a period not to exceed forty-five days.[1]

At Christopher's dispositional hearing, the State presented its report recommending commitment. Christopher was not represented by an attorney and the judge was advised that he had never had an attorney. After hearing briefly from the solicitor and from Christopher's legal guardian, the judge committed him for an indeterminate period of time not to exceed his twenty-first birthday. Christopher appeals.

## DISCUSSION

### 1. Did Christopher validly waive his right to counsel?

The right to counsel is guaranteed by the Sixth Amendment of the United States Constitution and extends to juvenile proceedings. *See e.g. In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). "A defendant may surrender his right to counsel through (1) waiver by affirmative, verbal request; (2) waiver by conduct; and (3) forfeiture." *State v. Thompson*, 355 S.C. 255, 262, 584 S.E.2d 131, 134 (Ct.App.2003).

Christopher argues that he did not waive his right to counsel because the family court judge did not comply with the procedures set forth in *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). A valid waiver of counsel, either by affirmative, verbal request or by conduct,

---

1. While this appeal was pending, Christopher petitioned this court for supersedeas, habeas corpus, or other relief, arguing he was not advised of the right to counsel and risks of proceeding *pro se*. This court denied the request for habeas corpus and remanded the petition for supersedeas to the family court. Because this court remanded the petition for supersedeas only, the issue concerning Christopher's right to counsel remained before us. On remand, however, the family court granted Christopher's motion for supersedeas. While both the adjudicatory and dispositional orders originally stated that Christopher pleaded guilty to all five charges, the orders were amended following the remand to reflect Christopher's plea to only two of the five charges.

requires compliance with *Faretta*. *See Thompson*, 355 S.C. at 263, 584 S.E.2d at 135 ("'[T]o the extent that the defendant's actions are examined under the doctrine of 'waiver,' there can be no valid waiver of the Sixth Amendment right to counsel unless the defendant also receives *Faretta* warnings.' Any subsequent misconduct will be treated as a 'waiver by conduct.'") (citations omitted).

*Faretta* allows an accused to waive his right to counsel if he is (1) advised of his right to counsel, and (2) adequately warned of the dangers of self-representation. *Prince v. State*, 301 S.C. 422, 424, 392 S.E.2d 462, 463 (1990). Furthermore, "[i]n the absence of a specific inquiry by the trial judge addressing the disadvantages of a *pro se* defense as required by the second *Faretta* prong, [the appellate court] will look to the record to determine whether petitioner had sufficient background or was apprised of his rights by some other source." *Id.* (citation omitted). To determine if an accused has sufficient background to comprehend the dangers of self-representation, courts consider a variety of factors including:

(1) the accused's age, educational background, and physical and mental health;

(2) whether the accused was previously involved in criminal trials;

(3) whether the accused knew the nature of the charge(s) and of the possible penalties;

(4) whether the accused was represented by counsel before trial and whether that attorney explained to him the dangers of self-representation;

(5) whether the accused was attempting to delay or manipulate the proceedings;

(6) whether the court appointed stand-by counsel;

(7) whether the accused knew he would be required to comply with the rules of procedure at trial;

(8) whether the accused knew of the legal challenges he could raise in defense to the charge(s) against him;

(9) whether the exchange between the accused and the court consisted merely of *pro forma* answers to *pro forma* questions; and

(10)  whether the accused's waiver resulted from either coercion or mistreatment.

*Gardner v. State,* 351 S.C. 407, 412–13, 570 S.E.2d 184, 186–87 (2002).

■  The record in this case reveals that neither the judge at the adjudicatory hearing nor the judge at the dispositional hearing complied with the procedures in *Faretta.*  Initially, Christopher was never adequately advised of his right to an attorney.  At Christopher's 48–hour detention hearing, the judge urged Christopher's legal guardian to find representation because of the serious nature of the charges.  At Christopher's adjudicatory hearing, the judge merely asked him if he understood that the court would "give [him] a trial if [he'd] like it and put up witnesses and that kind of thing."  Although the solicitor stated he had spoken with Christopher's legal guardian about acquiring representation, that by itself does not meet the requirements of *Faretta. See Watts v. State,* 347 S.C. 399, 403, 556 S.E.2d 368, 371 (2001) (finding the plea judge ineffectively warned of the dangers of appearing *pro se* when, among other things, he "permitted *the solicitor* to relate the circumstances of Petitioner's release of his appointed attorney") (emphasis in original).  Additionally, the record does not indicate Christopher ever elected to proceed *pro se. See State v. Reed,* 332 S.C. 35, 41, 503 S.E.2d 747, 750 ("The right to proceed *pro se* must be clearly asserted by the defendant prior to trial.").

Moreover, both family court judges failed to comply with *Faretta* because Christopher was never adequately warned of the dangers of self-representation.  In addition, the record reflects that Christopher has an insufficient background to comprehend the dangers of self-representation based on an application of the *Gardner* factors: (1) Christopher was sixteen years old at the time of the proceedings, but his psychosocial report states that he "appears emotionally and physically younger than his stated age."  Christopher has a full scale IQ of seventy-four (borderline range) and his last year in school was the tenth grade.  (2) It appears from the record that Christopher had been to family court before, but it is unclear as to the nature of his family court experience.  (3) Nothing in the record indicates that Christopher had any knowledge of the nature of the charges or the possible penal-

ties. Instead, Christopher merely indicated his willingness to accept responsibility for certain acts he had committed. (4) Christopher never appeared represented by counsel. While the public defender sat through Christopher's initial detention hearing, it is unclear whether he had any active involvement or communication with Christopher. (5) There is nothing in the record to indicate Christopher was attempting to delay or manipulate the proceedings. (6) The court did not appoint stand-by counsel. (7) The record does not indicate Christopher had any knowledge that he needed to comply with any rules of procedure or (8) any of the legal challenges he could raise in his defense. (9) The exchange between Christopher and the family court judges amounted to little more than *pro forma* questions and answers. (10) Notwithstanding, the record does not suggest that Christopher's appearance without counsel was a result of coercion or mistreatment. [**R. 13, 19**]. *See Gardner*, 351 S.C. at 412–13, 570 S.E.2d at 186–87.

We find the record in this case does not show that Christopher knowingly and intelligently waived his right to counsel. Furthermore, nothing in the record suggests Christopher forfeited his right to counsel. *See Thompson*, 355 S.C. at 267, 584 S.E.2d at 137 (stating that forfeiture requires extremely dilatory conduct and situations involving forfeiture are unusual, typically involving a manipulative or disruptive defendant).

The typical remedy for failing to show a knowing and intelligent waiver of counsel is to remand to the trial court for an evidentiary hearing to determine whether the waiver was, in fact, knowingly and intelligently made. *State v. Dixon*, 269 S.C. 107, 236 S.E.2d 419 (1977). However, this court can grant an appellant a new trial without an evidentiary hearing if it is clear that a hearing on remand would serve no useful purpose. *State v. Cash*, 304 S.C. 223, 225, 403 S.E.2d 632, 634 (1991). Because we find the record clearly reflects that the family court failed to adequately advise Christopher of the right to counsel, failed to make a specific inquiry as to Christopher's knowledge of the dangers of self-representation, and demonstrated that Christopher has an insufficient background to comprehend the dangers of self-representation, we find that remanding this case for a factual determination as to whether the waiver was knowingly and intelligently made

would serve no useful purpose. Instead, we reverse and remand for a new trial.

### 2. Did Christopher knowingly, voluntarily, and intelligently enter a plea of guilty?

Because we reverse and remand for a new trial on the right to counsel issue, we need not reach the issue concerning the voluntariness of his guilty plea. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling that an appellate court need not review remaining issues when disposition of prior issues are dispositive).

Accordingly, we reverse and remand for a new trial.

**REVERSED and REMANDED.**

ANDERSON and CURETON, JJ., concur.