# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Shanekia Renee Garvin, Petitioner.

Appellate Case No. 2025-000969

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Orangeburg County
Maite Murphy, Circuit Court Judge

---

Opinion No. 28324
Heard January 14, 2026 – Filed April 8, 2026

---

## REVERSED AND REMANDED

---

Chief Appellate Defender Wanda H. Carter, of
Columbia, for Petitioner.

Matthew C. Buchanan, of South Carolina Department of
Probation Parole and Pardon Services, of Columbia, for
Respondent.

---

**JUSTICE HILL:** Shanekia Garvin appeals her probation revocation, contending the circuit court erred in finding she had waived her right to counsel. The court of appeals affirmed the revocation, *State v. Garvin*, Op. No. 2025-UP-033 (S.C. Ct. App. filed Nov. 1, 2024), and we granted certiorari. Because we conclude Garvin

did not knowingly and voluntarily give up her right to have counsel represent her at the revocation hearing, we reverse and remand for a new revocation hearing.

## I.

On October 2, 2018, Garvin pled guilty to one count of ABHAN and one count of filing a false police report. She was sentenced to ten years suspended to five years' probation for the ABHAN conviction, and a concurrent sentence of five years suspended to five years' probation for the false report conviction.

It appears Garvin stopped contacting her probation agent around June 2022. She also fell behind on paying her supervision fees, a fine, and a court surcharge. In April 2023, a probation agent swore out an arrest warrant for Garvin for these alleged violations of the conditions of her probation. The warrant was served on her in jail, where she evidently was serving a family court contempt sentence.

On June 19, 2023, a probation agent presented Garvin with a Form 1364 (revised March 13, 2018), entitled "Notice of Probation /CSP Hearing and Acknowledgement of Notice." The Form stated:

> You are hereby directed to appear at a Probation/CSP Violation Hearing in General Sessions on Sept. 6, 2023 . . . .
>
> You may have an attorney represent you at this hearing. If you cannot afford an attorney and you desire the representation of the Orangeburg County Public Defender, you must apply for an appointed attorney with that office. If you choose to appear at the hearing without an attorney, you may be required to represent yourself. You are hereby advised that there are dangers and disadvantages to self-representation. An attorney may better understand courtroom procedure and may be better able to think of and present defenses to your violations. By appearing without an attorney you are acknowledging these dangers but are knowingly and voluntarily choosing to proceed without counsel.
>
> At the violation hearing you will have an opportunity to speak, and you may present witnesses or documentary evidence on your behalf. If requested, you will also have an opportunity to confront and cross-examine any

witnesses called to testify against you; however, the Department may elect to present affidavits of witnesses or police officers in lieu of testimony. . . . It is your responsibility to have your witnesses and attorney present.

. . .

<u>This directive has been read to me and I have been provided with a copy. I was also given an opportunity to ask questions about this directive before it was signed.</u>

Garvin signed the form. At the September 6, 2023, violation hearing before the circuit judge, the probation agent informed the court that Garvin had been continued on probation by Judge Dickson twice before, and he had warned her there would be "zero tolerance" for any future violations. After the agent alleged Garvin had committed the violations listed in the warrant, the following exchange ensued:

> The Court: On what date was she given notice of today's hearing?

> Probation Officer: She was given notice on June 19th of 2023 that her – she needed to have an attorney to represent her for the September 6th hearing.

> The Court: All right. Ms. Garvin, do you recall signing that letter with today's notice of being here?

> The Defendant: Yes, ma'am.

> The Court: And it included your right to have an attorney represent you?

> The Defendant: Yes, ma'am. I don't have an attorney.

> The Court: Well, you've had since June 19th.

Garvin disputed the allegation that she had not contacted her agent since she was released from jail, and claimed she had a money order to pay her outstanding fees and fines. The circuit court ordered that Garvin be drug tested. When the test came back positive for cocaine, the circuit court revoked Garvin's probation and ordered that she serve the full ten years of her sentence. Her probation would have expired as a matter of law in less than a month.

## II.

We first clarify the scope and extent of the right to counsel in the probation revocation setting in South Carolina. The right to counsel at a probation revocation hearing is guaranteed by Rule 602(a), SCACR. Though some of our appellate decisions mark the right as a Sixth Amendment one, the United States Supreme Court has held that the Sixth Amendment does not extend to probation hearings. *Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973). Still, a probationer may have a due process right to counsel in certain circumstances. *Id.* at 783–90. Rather than forcing trial judges to sort which probation hearings require counsel and which do not, South Carolina made the practical (and efficient) choice to guarantee the right to counsel for all revocation hearings. *See Barlet v. State*, 288 S.C. 481, 483, 343 S.E.2d 620, 622 (1986) (construing the verbatim predecessor to current Rule 602(a)); *Turner v. State*, 384 S.C. 451, 454, 682 S.E.2d 792, 793 (2009).

Although Garvin had the right to counsel at her revocation hearing, she also had the right to give it up. For us to find she did so, the State must convince us the record shows that she did so freely and intelligently. *State v. Dial*, 429 S.C. 128, 133, 838 S.E.2d 501, 504 (2020). Put another way, Garvin's choice to forgo her right must have been an act of her free will, taken with adequate understanding of what she was giving up and the consequences of doing so. One of these consequences is the danger of representing oneself at the revocation hearing. *Id.*

At the probation revocation hearing, a trial court's general warning about the dangers of self-representation is enough. This is so because probation is a matter of grace, and a defendant's liberty interest is diminished while on probation imposed as part of the original sentence. *Gagnon*, 411 U.S. at 782 n.4. Plus, probation hearings are not classified as a stage of a criminal prosecution, so many of the trial rights guaranteed by Constitutional provisions are not in play. *Id.* at 782.

The State argues that the two questions the trial court asked Garvin—whether she recalled signing the notice form and that the form included her right to counsel— were enough to establish waiver.

We cannot agree. First, the trial court never asked Garvin whether she voluntarily signed the form and understood its contents. Second, the form does not inform Garvin that she has the *right* to counsel; it states only that she *"may"* have a lawyer represent her. Waiver, after all, is the intentional relinquishment of a known right. *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938); *Osbey v. State*, 425 S.C. 615, 619–20, 825 S.E.2d 48, 50 (2019). The trial court's description of the form as including her right to counsel sent Garvin, at best, a mixed message. Any clarity it may have

brought is uncertain.  Waiver requires comprehension, and what matters is what the defendant reasonably understood, not what the court said.  *Hines v. State*, 443 S.C. 32, 39–40, 902 S.E.2d 377, 380–81 (2024).

The form did, though, adequately advise Garvin of the nature of the hearing, acceptable forms of evidence, and the danger of representing herself.  Had the trial court clarified Garvin's understanding of her right to counsel, confirmed she was not under the influence, and made sure she had freely signed the form and understood it, the record likely would have established a valid waiver.

We recognize we may find waiver if we are persuaded Garvin's prior criminal court experience or other sources armed her with an awareness and full understanding of her right to counsel.  *E.g.*, *Prince v. State*, 301 S.C. 422, 424, 392 S.E.2d 462, 463 (1990); *Gardner v. State*, 351 S.C. 407, 411–13, 570 S.E.2d 184, 186–87 (2002).  This was Garvin's third trip to a hearing to revoke a sentence she had received over four years before at a guilty plea where she had the aid of a lawyer.  While this history might lead one to assume Garvin may have been walking into the hearing with "eyes open" as to her right to counsel, we cannot be sure this was so given the sparse record before us.  As we have noted, waiver must be proven by the State, and assumptions cannot satisfy this burden.  *See Dial*, 429 S.C. at 134–35, 838 S.E.2d at 505 (refusing to find waiver based on a defendant's prior criminal court experience and status as a probationer).

We acknowledge our holding today may seem at odds with *State v. Bryant*, 383 S.C. 410, 413, 680 S.E.2d 11, 12 (Ct. App. 2009), where the court of appeals found a valid waiver of the right to counsel based on the same form Garvin signed here.  What sets *Bryant* apart, though, is the trial court's expansive colloquy at the hearing (after Byrant signed the form) confirming Bryant's understanding of her right to counsel and her informed wish to waive it.  *Id.* at 416, 680 S.E.2d at 14.

Because we conclude the State did not prove Garvin freely and intelligently waived her right to counsel, the revocation of her probation is

**REVERSED AND REMANDED.**

**KITTREDGE, C.J., FEW, JAMES and VERDIN, JJ., concur.**