**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Micah Christian Sylve Brown, Appellant.

Appellate Case No. 2022-001605

Appeal From Richland County
Clifton B. Newman, Circuit Court Judge
DeAndrea G. Benjamin, Circuit Court Judge

Unpublished Opinion No. 2026-UP-174
Submitted February 3, 2026 – Filed April 15, 2026

**REVERSED AND REMANDED**

Appellate Defender Joanna Katherine Delany, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Deputy Attorney General Donald J. Zelenka, Senior Assistant Deputy Attorney General Melody J. Brown, and Solicitor Byron E. Gipson, all of Columbia, for Respondent.

**PER CURIAM:**  Micah Brown appeals his conviction for two counts of murder and one count of attempted murder.  Brown argues the trial court erred in denying him appointed counsel and requiring him to proceed to trial *pro se*.   We reverse and remand for a new trial.

## I. BACKGROUND

Brown was indicted in 2019 for the November 2018 murders of Jasmine Richardson and Brennan Montgomery and the attempted murder of Taurus Williams.  A public defender was appointed to represent him on the charges.  In September 2019, Brown filed a *pro se* motion to relieve counsel.   The circuit court granted the motion, relieving the public defenders' office and appointing an attorney from the Rule 608, SCACR, appointment list.   Unfortunately, the recording of the hearing in front of the circuit court was lost when the court reporter experienced a "catastrophic failure" of her hard drive.  A second attorney (Attorney 2) was appointed, but Brown moved to relieve Attorney 2 as well.  Brown appeared in front of a different circuit court judge on July 11, 2022, to argue his motion to relieve Attorney 2.

At the time of the motion hearing in front of the circuit court, a trial date had been set for October 31, 2022.[1]  Brown told the court he fired his first attorney because she lied to him about a motion and was "hiding" the motion from him.  His grounds for dissatisfaction with Attorney 2 were that he had not requested a bond reduction on his behalf, he recommended Brown accept a plea offer of fifty years, and he had not devoted what Brown felt was sufficient time and attention to his case.

Attorney 2 told the court that Brown was only nineteen when he was arrested for the current charges.  His bond was originally denied due to the violent nature of the offenses.  Brown was charged with shooting one victim in the head, beating the second victim to death, and shooting and beating a third victim who survived.  Despite the serious nature of the charges, Attorney 2 was able to get Brown a surety bond in the amount of $500,000.  He also hired an investigator in the case and hired a psychiatrist to evaluate Brown.  Attorney 2 explained that, at his repeated urging, the Solicitor offered Brown a plea deal with a recommended sentence of thirty to fifty years imprisonment, which Brown declined.  The State later withdrew the offer and at the time of the motion hearing the State was only offering a fifty-year sentence in exchange for Brown's guilty plea.  Attorney 2 also

---

[1] Brown also had another set of charges pending against him, including a first-degree burglary charge.

explained he did not want to request a bond reduction for fear that would spur the judge to set a trial date, which he did not think was in Brown's best interest. Attorney 2 testified the relationship between the two had deteriorated, with Brown repeatedly cursing at him and calling him vulgar names.

The circuit court judge advised Brown that he would not appoint a third lawyer to represent him, so he would either have to allow Attorney 2 to continue representing him or he would have to proceed without counsel. The judge expressed his feeling that Brown was being difficult to get along with. He warned him:

> If I let [Attorney 2] go, if I let you relieve him, then you won't have a lawyer because I'm not going to appoint another one because if you can't get along with [the first attorney] and you can't get along with [Attorney 2], then you won't be able to get along with another one either. [Y]ou blow it with this lawyer, you're going to be here representing yourself because I don't just name lawyer after lawyer after lawyer because I'm convinced that no one can satisfy you.

Brown repeatedly told the court that he did not want to represent himself. However, he also made statements indicating he was not going to be satisfied with *any* appointed lawyer because of his professed belief that the system was corrupt and only a private attorney would advocate for him. The judge adjourned the hearing without making a ruling and told Brown he was going to let him think about it for a couple of weeks, again warning him that if he relieved Attorney 2 Brown would have to represent himself.

The parties reconvened on August 15, 2022, with Brown appearing in front of the same circuit court judge. Brown again stated he wanted Attorney 2 removed as his attorney, and the judge again warned him he did not have the right "to pick and choose." The judge found that Brown had not given the court any legitimate reason why his attorney should be relieved, and if he relieved his attorney then Brown would have to represent himself. When Brown persisted in asking for his attorney to be relieved, the judge granted the motion and stated that Brown would have to represent himself. The judge did not advise Brown of the dangers of self-representation at either the July 11 or the August 15 hearing, other than advising him that the murder charges carried a potential life sentence.

Brown appeared in front of the same circuit court judge again on October 14, 2022, for a status conference in advance of his November 7, 2022, trial date. At the status conference, Brown again stated he did not want to proceed *pro se* and was

not ready to go to trial.  At the conclusion of the status conference, the judge stated, "*Mr. Brown has been advised of the dangers of self-representation*.  He did not want to have a lawyer that was provided to him, so he has to represent himself."  Nowhere in the record before this court, however, at any of his pre-trial hearings was Brown advised of the dangers of self-representation per *Faretta v. California*, 422 U.S. 806 (1975).[2]  At the conclusion of the status conference, the judge appointed standby counsel to assist Brown at trial.

Brown met with standby counsel for the first time on the Thursday before trial.  Counsel offered to represent him at trial, but Brown declined.  On the first day of trial, Counsel confirmed that he was willing to represent Brown and had received the discovery in the case on the Friday before trial.  The trial judge, who Brown had not previously appeared before, gave Brown thorough *Faretta* warnings and asked him repeatedly if he wanted Counsel to represent him.  Brown repeatedly declined the offer while simultaneously also saying he did not want to represent himself.  Brown did not request a continuance.

The case proceeded to a jury trial with Brown appearing *pro se* with the assistance of standby counsel.  The trial judge explained to Brown that Counsel could not offer him any advice but could answer any procedural questions.  Brown remained silent during most of the trial except for making a handful of hearsay objections.  The jury deliberated for an hour and forty minutes before finding him guilty of all charges.  Brown remained silent during the sentencing phase and did not offer any testimony or witnesses in mitigation.   Brown had no prior adult record and was twenty-three at the time of trial.  The trial judge sentenced Brown to life for each murder charge and to a term of thirty years for attempted murder, with all sentences to run concurrently.

## II.    STANDARD OF REVIEW

"Whether a defendant has knowingly, intelligently, and voluntarily waived his right to counsel is a mixed question of law and fact which appellate courts review de novo." *State v. Samuel*, 422 S.C. 596, 602, 813 S.E.2d 487, 490 (2018).  An appellate court "review[s] a [trial court's] findings of historical fact for clear error; however, we review the denial of the right of self-representation based upon those findings of fact de novo." *Id.*  "In doing so, [an appellate court] must consider the defendant's testimony, history, and the circumstances of his decision, as presented to the [trial court] at the time the defendant made his request [to waive his right to

---

[2] Neither party argues on appeal that Brown was given *Faretta* warnings at the hearing in September of 2019, for which we do not have a record.

counsel]." *Id.*

## III.   LAW AND ANALYSIS

"The Sixth Amendment guarantees a criminal defendant the right to the effective assistance of counsel; it also guarantees a defendant the right to represent himself. A defendant must necessarily choose between these guarantees." *Hines v. State*, 443 S.C. 32, 38, 902 S.E.2d 377, 380 (2024).  "Courts have recognized three ways in which a defendant may relinquish his right to counsel": express waiver, waiver by conduct, or forfeiture.  *State v. Boykin*, 324 S.C. 552, 556-57, 478 S.E.2d 689, 690-91 (Ct. App. 1996).

An express waiver must be knowing and intelligent.  *Osbey v. State*, 425 S.C. 615, 618-19, 825 S.E.2d 48, 50 (2019).  The defendant must "clearly and unequivocally" assert he wants to represent himself and do so knowingly, intelligently and voluntarily.  *Faretta*, 422 U.S. at 835.  "To establish a valid waiver of counsel, *Faretta* requires the accused be: (1) advised of his right to counsel; and (2) adequately warned of the dangers of self-representation." *Prince v. State*, 301 S.C. 422, 423-24, 392 S.E.2d 462, 463 (1990).

"[The] defendant may also waive his right to counsel through his conduct." *Boykin*, 324 S.C. at 556, 478 S.E.2d at 691.  "Once a defendant has been warned that his misconduct will thereafter be treated as a waiver of his right to counsel, any subsequent misconduct is treated as a 'waiver by conduct.'"  *Id.  Faretta* warnings are required whether the waiver of counsel is by express request or by the defendant's conduct.  *Osbey*, 425 S.C. at 620, 825 S.E.2d at 51; *see also Gardner v. State*, 351 S.C. 407, 413, 570 S.E.2d 184, 187 (2002) (holding petitioner, who was repeatedly advised of his right to a public defender and still proceeded *pro se*, did not knowingly waive his right to counsel where he was not warned of the dangers of self-representation).

In rare instances, a defendant may also forfeit his right to counsel.  "Forfeiture results in the loss of the right [to counsel] regardless of the defendant's knowledge of either the consequences of his actions or the dangers of self-representation." *Boykin,* 324 S.C. at 557, 478 S.E.2d at 691.  "Forfeiture is an extreme sanction in response to extreme conduct that imperils the integrity or safety of court proceedings." *Commonwealth v. Means*, 907 N.E.2d 646, 658 (Mass. 2009).  The sanction is generally reserved for extremely serious misconduct involving physical violence, or threats of physical violence.  *See Boykin*, 324 S.C. at 554, 558, 478 S.E.2d at 690, 692 (finding defendant who cussed his attorney and "came after [him]" at the detention center did not forfeit his right to counsel where he was not

warned of the consequences of his actions or the dangers of self-representation); *see also Gilchrist v. O'Keefe*, 260 F.3d 87, 89-90 (2d Cir. 2001) (upholding a forfeiture finding at sentencing phase after defendant punched his appointed attorney in the head); *United States v. Leggett*, 162 F.3d 237, 251 (3d Cir. 1998) (upholding a forfeiture finding at sentencing phase after defendant brutally attacked his attorney in the courtroom); *United States v. McLeod*, 53 F.3d 322, 325-26 (11th Cir. 1995) (upholding a forfeiture finding after defendant threatened to kill his attorney, threatened to sue him, and tried to persuade attorney to engage in unethical conduct). We find Brown's conduct in this case fell short of the egregious conduct necessary to establish forfeiture of the right to counsel. While Brown was undoubtedly rude and arrogant, and had cursed his attorney repeatedly, he did not physically attack him or threaten him with physical violence.

The U.S. Supreme Court has not mandated any particular script for a *Faretta* colloquy; rather, "[t]he information a defendant must possess in order to make an intelligent election . . . will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." *Iowa v. Tovar*, 541 U.S. 77, 88 (2004). "Where, as in *Faretta*, the defendant is venturing to represent himself at trial, the trial court must rigorously convey specific warnings of the pitfalls of going to trial without a lawyer." *Hines*, 443 S.C. at 40, 902 S.E.2d at 381.

"In the absence of an inquiry by the [trial court], courts look to the record to determine if the accused had sufficient background to understand the disadvantages of self-representation." *State v. Cash*, 309 S.C. 40, 42, 419 S.E.2d 811, 813 (Ct. App. 1992). The court considers the following non-exhaustive list of factors to determine if a defendant has sufficient background to understand the dangers of self-representation:

> (1) the accused's age, educational background, and physical and mental health; (2) whether the accused was previously involved in criminal trials; (3) whether he knew of the nature of the charge and of the possible penalties; (4) whether he was represented by counsel before trial or whether an attorney indicated to him the difficulty of self-representation in his particular case; (5) whether he was attempting to delay or manipulate the proceedings; (6) whether the court appointed stand-by counsel; (7) whether the accused knew he would be required to comply with the rules of procedure at trial; (8) whether he knew of legal challenges he could raise in defense to the charges against

him; (9) whether the exchange between the accused and the court consisted merely of *pro forma* answers to *pro forma* questions; and (10) whether the accused's waiver resulted from either coercion or mistreatment.

*Id.* at 43, 419 S.E.2d at 813. The erroneous deprivation of the assistance of counsel is *per se* reversible error and cannot be treated as harmless. *United States v. Goldberg*, 67 F.3d 1092, 1103 (3d Cir.1995); *see also Chapman v. California*, 386 U.S. 18, 23 & n.8 (1967) ("[T]here are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error . . . .")

Brown was unequivocally warned that if he persisted in requesting that Attorney 2 be relieved, he would then have to represent himself. The South Carolina Supreme Court has explicitly stated, however, that *Faretta* warnings are required whether the defendant's waiver of counsel is by "affirmative, verbal request" or "by conduct." *Osbey*, 425 S.C. at 620, 825 S.E.2d at 51; *see also Boykin*, 324 S.C. at 558, 478 S.E.2d at 692 (holding the defendant could not have waived his right to counsel "either expressly or by his conduct" where he was not warned of the dangers of self-representation); *Goldberg*, 67 F.3d at 1102-03 (finding that "any claim that [defendant] waived his right to counsel by conduct is precluded" by the court's failure to inform him of the risks of self-representation); *United States v. Padilla*, 819 F.2d 952, 958-59 (10th Cir. 1987) (finding no waiver by conduct where trial court failed to determine whether defendant appreciated the hazards of self-representation); *Wilkes v. Israel*, 627 F.2d 32, 34-35 (7th Cir. 1980) (finding a waiver by conduct was knowingly and intelligently made where trial court questioned defendant extensively about the inadequacies of conducting his own defense).

In this case, Brown was not advised of the dangers of self-representation until the morning of trial and thus could not have waived his right to counsel by his conduct before trial. In the absence of a specific warning, we next look to the *Cash* factors to determine if Brown had sufficient background to understand the dangers of self-representation. Brown was nineteen and had no adult criminal record at the time of his trial. There is nothing in the record to indicate whether he finished high school or ever held a job. While the court did discuss, generally, the charges and possible penalties, there is nothing else in the record to indicate Brown had sufficient background to appreciate the dangers of self-representation. His understanding of criminal motions practice seemed rudimentary at best.

The State argues Brown knowingly and intelligently waived his right to counsel when he declined the trial judge's offer to appoint standby counsel to represent him

on the day of trial.  The State points out that the trial judge thoroughly advised Brown of the dangers of self-representation at that point and standby counsel was present and willing to represent Brown.  Counsel met with Brown the previous Thursday and had received the State's discovery on the Friday before trial.

Brown cites *Powell v. Alabama*, 287 U.S. 45 (1932), for the proposition that no such last-minute appointment of counsel could possibly be effective.  In *Powell*, the trial judge appointed "all the members of the bar" six days before trial for the defendants' arraignment.  *Id.* at 53, 56.  On the day of trial, a lawyer from out of state appeared for the defendants but stated he had not had an opportunity to prepare.  *Id.* at 57.  The trial court appointed the out of state lawyer to represent the defendants, with whatever help the local bar could provide.  *Id.* at 57-58.  The U.S. Supreme Court found that the last-minute appointments were "either so indefinite or so close upon the trial as to amount to a denial of effective and substantial aid."  *Id.* at 53.  The U.S. Supreme Court in *United States v. Cronic* referred to the circumstances in *Powell* as being "of th[e] magnitude . . . [that] although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial."  466 U.S. 648, 659-60 (1984).

We find Brown's Sixth Amendment right to counsel was violated when he was not warned of the dangers of self-representation until the morning of trial.  At that point, Brown was faced with the option of either representing himself or proceeding to trial with an unprepared attorney and losing the right to appeal the prior judge's denial of his request for counsel.  The possibility that any lawyer could provide effective assistance for Brown at this late juncture was so low as to make the offer of counsel meaningless.

## IV.   CONCLUSION

A criminal defendant may waive his right to counsel where he is warned in advance that successive unfounded motions to relieve counsel will result in him proceeding *pro se*.  However, such a "waiver by conduct" will only be considered knowing and intelligent if the defendant was also warned of the dangers of self-representation.  In this case, Brown did not receive *Faretta* warnings until the morning of trial when it was too late for an attorney to provide him with meaningful assistance.  We therefore find Brown was deprived of his Sixth Amendment right to counsel.  We reverse his conviction and remand for a new trial.

**REVERSED AND REMANDED.**[3]

**GEATHERS, HEWITT, and CURTIS, JJ., concur.**

---

[3] We decide this case without oral argument pursuant to Rule 215, SCACR.